IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUTH M. MARION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17 – cv – 5792 |
| | ) |
| ROUNDY'S ILLINOIS, LLC | ) |
| d/b/a MARIANO's, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

Defendant Roundy's Illinois, LLC d/b/a Mariano's ("Defendant," "Mariano's" or the "Company"), by its undersigned counsel, respectfully submits this memorandum of law in support of its Rule 12(b)(6) motion to dismiss Plaintiff's Complaint.

**INTRODUCTION**

Plaintiff alleges her former employer, Mariano's, discriminated against her because of her arthritis (a medical condition she attributes to her age) and retaliated against her for requesting a workplace accommodation. Although her Complaint is voluminous – ten (10) counts and 215-paragraphs – her claims fall neatly into three categories: (i) disability-based discrimination under the Americans with Disabilities Act ("ADA"); (ii) age-based discrimination under the Age Discrimination in Employment Act ("ADEA"); and (iii) statutory retaliation claims. Despite her "kitchen-sink" approach to pleading, ***none*** of Plaintiff's claims can survive dismissal under Rule 12(b)(6).

Plaintiff's disability claims under the ADA are invalid because she inexplicably fails to allege her arthritis materially interfered with her ability to work or live. Instead, Plaintiff simply

proclaims – in a formulaic recitation of the elements of an ADA claim – that her arthritis constitutes a "disability." To have standing under the ADA, however, Plaintiff must plead facts that would demonstrate her arthritis "substantially limits" her major life activity of standing. Not only has Plaintiff failed to allege those crucial facts, the exhibits to her Complaint refute any suggestion that she is "disabled."

According to her own exhibits – specifically, the most recent doctor's note from her treating physician – Plaintiff is *"free to work with no restrictions."* (Compl., Ex. E). The other exhibits attached to her Complaint establish that she is able to stand anywhere from *three (3) hours* to *five (5) hours*, notwithstanding her arthritis. (Compl., Exs. A, C & D). These exhibits control over any contrary allegations by Plaintiff, and prove as a matter of law that she is not "disabled" as defined under the ADA. Indeed, even if Plaintiff's arthritis were so bad that she could only stand for *30-40 minutes*, she still would not qualify as "disabled" under the Seventh Circuit's interpretation of the ADA.[1]

Plaintiff's ADEA claims fare no better, because they are based on her purported disability, instead of her age. Plaintiff's theory of liability under the ADEA is premised on her belief that Mariano's discriminated against her because of her arthritis, which she claims is "related to her age." While Plaintiff may believe that is "close enough," controlling precedent says otherwise. With near unanimity, courts have rejected "age-plus-disability" claims under the ADEA. Both the Supreme Court and the Seventh Circuit have consistently held that an employee has no claim under the ADEA unless she can demonstrate that her employer discriminated against her specifically because of her age. It is not enough to "infer" discrimination under the ADEA based on some factor "related to age," such as health.

---

[1] *See, Williams v. Excel Foundry & Machine, Inc.,* 489 F.3d 309 (7th Cir. 2007), discussed *infra.* at pp. 6-8.

Finally, Plaintiff's retaliation claims must be dismissed because she failed to exhaust her administrative remedies. According to her Complaint, each of the purported acts of retaliation occurred several months *before* she filed her charge of discrimination with the EEOC. This is not a case where Plaintiff claims she was retaliated against because she filed an EEOC charge, or that the alleged retaliation occurred after she filed her charge. Plaintiff could have (and should have) included her retaliation claims in her EEOC charge. She consciously failed to do so, and is now precluded from asserting those claims in this lawsuit.

## FACTUAL BACKGROUND[2]

Plaintiff began working as a "front end supervisor" at Mariano's in May of 2011. (Dkt. 1 at ¶ 76). According to Plaintiff, she suffers from arthritis in her right hip. (*Id.*, ¶ 72). She believes her arthritis is related to her age, and constitutes a "disability." (*Id.*, ¶¶ 73, 105-106, 137). On April 22, 2013, Plaintiff submitted a request for workplace accommodation to Mariano's, along with a doctor's note from her treating physician. (Dkt. 1, Exs. C-D). In her accommodation request, Plaintiff explained to the Company that she was able to stand for up to three (3) hours, before experiencing arthritis pain. (*Id.*, Ex. C). In her own words, "Standing on my feet for 8 hours a day becomes painful after 3 hours or so." (*Id.*). Plaintiff's treating physician provided a more optimistic assessment, and stated that she could stand for up to five (5) hours during her regular shift. (*Id.*, Ex. D).

In response to her request for a workplace accommodation, Mariano's engaged Plaintiff in an interactive process to determine whether a reasonable accommodation was possible. (Dkt. 1,

---

[2] For purposes of this motion only, Mariano's accepts as "true" the well-pled facts – but not the legal conclusions – alleged in the Complaint. *See, McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 885 (7th Cir. 2012) ("although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion."), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mariano's reserves the right to contest any and all allegations set forth in the Complaint.

¶¶ 79-82). Accordingly, on May 28, 2013, Mariano's met with Plaintiff and agreed to limit her shifts to five hours per day, as indicated in her doctor's note. (*Id.*, ¶ 81; Ex. D). Plaintiff did not like the fact that the accommodation she had requested – a reduction in hours to five (5) hours per day – would cause her to be classified as a part-time employee. (*Id.*, ¶¶ 82-86). Accordingly, she obtained another doctor's note from her treating physician, dated June 1, 2013, stating that she was ***"free to work with no restrictions."*** (*Id.*, Ex. E).

On June 7, 2013, Plaintiff was suspended without pay based on an accusation that she had been "discounting." (*Id.*, ¶ 109). Following an investigation, Mariano's terminated Plaintiff's employment on June 17, 2013, for "discounting." (*Id.*, ¶ 110). Plaintiff exercised her rights under the applicable Collective Bargaining Agreement, and filed a grievance with her Union. (*Id.*, ¶ 210). Following arbitration, Plaintiff was reinstated as a Company employee on October 3, 2013. (*Id.*). Plaintiff worked at Mariano's for another eighteen (18) months, before she resigned and voluntarily terminated her employment in May of 2015. (*Id.*, ¶ 208).

Two months after her dispute had been resolved through binding arbitration with the Union, Plaintiff dually-filed a Charge of Discrimination ("Charge") with the EEOC and the Illinois Department of Human Rights ("IDHR") on December 27, 2013. (*Id.*, Ex. A). More than a year later, Plaintiff filed an Amended Charge. (*Id.*, Ex. B). In her Complaint, Plaintiff alleges that Mariano's "retaliated" against her by:

- Suspending her without pay on **June 7, 2013** – (Counts III-IV)
- Making "threats" and "intimidating" her during the meeting on **May 28, 2013** – (Counts V-VI);
- Terminating her employment on **June 17, 2013** – (Counts VII and VIII); and
- Making her feel "uncomfortable" following her reinstatement on **October 3, 2013** – (Count IX).

4

Neither Plaintiff's original Charge (filed on **December 27, 2013**), nor her Amended Charge (filed on **February 4, 2015**) contain any allegations of purported "retaliation" by Mariano's. (*Id.*, Exs. A-B).

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts sufficient to establish a "legally cognizable right of action." *Bell Atlantic. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In addition, although a complaint need not provide detailed factual allegations, it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Id.* Allegations that are "sketchy or implausible" are insufficient to prevent dismissal of a complaint. *Brooks v. Ross,* 578 F.3d 574, 580–82 (7th Cir. 2009).

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE AN ADA CLAIM FOR "FAILURE TO ACCOMMODATE," AND COUNT I SHOULD BE DISMISSED

In Count I of her Complaint, Plaintiff tries to allege a claim for failure to accommodate under the ADA. To state a claim under the ADA, an employee must allege facts establishing each of the following elements: (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate her disability. *Bunn v. Khoury Enterprises, Inc.,* 753 F.3d 676, 682 (7th Cir. 2014). If an employee fails to plead facts sufficient to establish all three of these elements, her claim must be dismissed. *See, e.g., Id.* In this case, Plaintiff cannot establish the first two elements of an ADA claim, and Count I of her Complaint should be dismissed.

### A. <u>Plaintiff is Not "Disabled" Under the ADA</u>

Plaintiff's ADA claim fails at the outset, because she has pled no facts that would establish she is a qualified individual with a "disability" as defined by the ADA. Nor can she, because the exhibits attached to her Complaint belie any such claim. According to Plaintiff (and her doctor), her purported disability – arthritis in her hip – prevented her from standing for more than 3-5 hours at a time. As a matter of law, this does not constitute a "disability." Indeed, the Seventh Circuit has found that the inability to stand for more than *30-40 minutes* does not constitute a "substantial limitation" of a major life activity.

The ADA does not provide "general protection" to all "medically afflicted persons." *Moore v. J.B. Hunt Transp., Inc.,* 221 F.3d 944, 950–52 (7th Cir. 2000). Moreover, "all persons impaired by virtue of common afflictions cannot be disabled." *Williams v. Excel Foundry & Machine, Inc.,* 489 F.3d 309, 311 (7th Cir. 2007). Instead, the ADA only protects a "qualified individual with a disability" as defined under the Act. 42 U.S.C. § 12112(a). Thus, a plaintiff's "threshold burden" for stating a claim is to "establish that he is disabled as that term is defined in the ADA." *Moore*, 221 F.3d at 950-52; *see also Bunn,* 753 F.3d at 682 (first element of an ADA claim for failure to accommodate is "a qualified individual with a disability").

To establish she has a disability within the meaning of the ADA, a plaintiff must demonstrate she has a physical or mental impairment that substantially limits her major life activities. The ADA expressly defines the term "disability" to mean:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2)

Courts utilize a three-step inquiry to determine whether a plaintiff's alleged medical condition constitutes a "disability" under the ADA. *Moore,* 221 F.3d at 950. First, a plaintiff must show she has some condition that is "a physical or mental impairment." *Id.* at 950-51. Second, a plaintiff must identify some activity that constitutes a "major life activity" within the meaning of the ADA. *Id.* Finally, a plaintiff must demonstrate her alleged condition imposes "a substantial limit on [her] identified major life activity." *Id.* Courts consistently reject ADA claims where a plaintiff is unable to establish all three of these criteria.

For example, the Seventh Circuit rejected an ADA claim by a plaintiff suffering from "arthritis," because his condition did not "substantially limit" a major life activity. *Moore,* 221 F.3d at 951. Although the plaintiff's arthritis impaired his ability to walk, the limitation was not "substantial" – and, hence, the plaintiff did not suffer a "disability" under the ADA – because he was able to walk "distances of less than a mile 'consistently.'" *Id.*

Similarly, in *Williams v. Excel Foundry,* the Seventh Circuit rejected the ADA claim from a plaintiff suffering from a back injury that prevented him from standing for extended periods of time. 489 F.3d at 311-12. The plaintiff argued that his back injury "substantially limited" his major life activity of standing, because it rendered him unable to "stand more than thirty to forty minutes at a time." *Id.* The Seventh Circuit rejected the plaintiff's argument as a matter of law, and concluded that the inability to stand for more than 30-40 minutes ***does not*** constitute a substantial limitation of a major life activity:

> It is not apparent to us…that Williams's limitations amount to significant restrictions on the condition, manner or duration of his ability to stand as compared to the average person. Certainly common conditions, like excess weight and back pain, impair an individual's ability to stand for long periods or on one leg. But all persons impaired by virtue of common afflictions cannot be disabled.

\*   \*   \*

7

> Because we also believe that thirty to forty minutes is not a "very brief" period, we find that Williams's inability to stand for longer periods does not constitute a substantial limitation on the major life activity of standing.

*Id.*

Here, Plaintiff's Complaint fails to allege even the most basic information necessary to assess whether she may have a disability within the meaning of the ADA. Plaintiff summarily proclaims herself a "qualified individual with a disability within the meaning of the ADA" because she has "an arthritic right hip." (Dkt. 1 at ¶¶ 33, 72). Significantly, Plaintiff does not make any attempt to explain how her life activities are impacted by her alleged disability. Plaintiff certainly does not identify any major life activity that she believes is substantially limited by her arthritis. Thus, Plaintiff's Complaint lacks the fundamental allegations necessary to allow this Court to assess whether it is plausible that she may have a disability within the meaning of the ADA.

To make matters worse for Plaintiff, the exhibits appended to her Complaint demonstrate her arthritis ***did not*** "substantially limit" her major life activities. This is fatal to her claim, because the exhibits to her Complaint control over her allegations. *See, e.g., Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss"). In her request for a workplace accommodation ("Exhibit C" to her Complaint), Plaintiff stated that she was able to stand for up to ***three (3) hours*** before she experienced pain from her arthritis:

> 1. Please describe completely the duties of your job that you cannot perform:
>
>> *Standing on my feet for 8 hours a day becomes painful after 3 hours or so.*

(Dkt. 1, at Ex. C, p. 1) (handwriting italicized).

According to the doctor's note prepared by her physician on April 22, 2013 ("Exhibit D" to her Complaint), Plaintiff was able to stand for up to *five (5) hours* during her shift. (Dkt. 1 at Ex. D). In her Charge of Discrimination ("Exhibit A" to her Complaint), Plaintiff states under oath that her arthritis only prevented her from standing for more than *five (5) hours* during her shift. (Dkt. 1, at Ex. A, p. 2). Finally, on June 1, 2013, Plaintiff's doctor opined that she was "free to work with *no restrictions*." (Dkt. 1 at Ex. E) (emphasis added).

Thus, contrary to what Plaintiff may suggest, the exhibits to her Complaint establish that she was able to stand at least 3-5 hours, if not indefinitely. As a matter of law, Plaintiff's arthritis did not "substantially limit" her major life activity of standing. *See Williams,* 489 F.3d at 311-12 (holding major life activity of standing is not "substantially limited" where plaintiff is able to stand for "thirty to forty minutes"). Thus, Plaintiff does not qualify as a person with a "disability" under the ADA, and Count I of her Complaint must be dismissed.

### B. Plaintiff Fails to Adequately Allege Mariano's was Aware of her Supposed Disability

Plaintiff also fails to establish that Mariano's was aware of her supposed disability. Under the ADA, "[a]n employee has the initial duty to inform the employer of a disability before ADA liability is triggered for failure to provide accommodations." *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1012-13 (7th Cir. 1997). Thereafter, "both parties bear responsibility for determining what accommodation is necessary." *Id.*

In this case, Plaintiff fails to allege she adequately discharged her duty to inform Mariano's of her supposed disability. Her lone conclusory allegation – "Mariano's was aware of her disability" – stands in stark contrast to the exhibits of her Complaint, which establish she was "free to work with no restrictions." (*Cf.*, Dkt. 1 at ¶ 74; Dkt. 1 at Ex. E). Although Plaintiff initially requested an accommodation for her arthritic hip, Plaintiff admits she withdrew her request when

9

Mariano's *agreed* to limit her shifts to five (5) hours per day. (Dkt. 1, at ¶¶ 77, 82 and Exs. C-D). According to Plaintiff, she "had her doctor submit a note withdrawing [her] restrictions" barely five weeks after she initially requested an accommodation. (*Id.* at ¶ 86). Plaintiff's doctor promptly complied with her instructions, advising Mariano's that she was "free to work with no restrictions" as of June 1, 2013. (*Id.* at Ex. E).

Plaintiff's doctor's note, clearing her to work without restrictions, is fatal to her ADA claim. *See, e.g., Hunt-Golliday*, 104 F.3d at 1012-13 (rejecting failure-to-accommodate claim as a matter of law where doctor's note stated plaintiff "was capable of working" and mentioning "nothing about her needing any special accommodation"). Count I of her Complaint should be dismissed accordingly.

## II. COUNT II OF PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER EITHER THE ADEA OR THE ADA

In Count II of her Complaint, Plaintiff attempts to state a claim for "disability related to age." (Dkt. 1, p. 21). It is unclear whether Plaintiff is trying to allege "age discrimination" under the ADEA, "failure to accommodate" under the ADA, or some sort of hybrid theory based on both statutes (e.g., that she was "disabled" based on her "age"). Regardless of her intentions, it is clear that Count II of her Complaint fails to state a claim upon which relief can be granted.

### A. Plaintiff Fails to State a Claim under the ADEA, because She Does Not Allege Any Discrimination Based on her Age

In Count II of her Complaint, Plaintiff fails to state a viable claim for age-based discrimination under the ADEA. In fact, Plaintiff never actually alleges she was discriminated against because of her age. Instead, Plaintiff claims Mariano's discriminated against her because of her *arthritis* – which she claims is "related to her age." Unfortunately for Plaintiff, that is not a viable legal theory under the ADEA.

The ADEA prohibits discrimination against employees based on their age. The statutory language is unambiguous, and its coverage is limited to unlawful discrimination specifically stemming from an employee's *age* – not any other factor:

> It shall be unlawful for an employer –
>
> …to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, ***because of such individual's age*** …
>
> 29 U.S.C.A. § 623(a)(1) (emphasis added).

To state a claim for relief under the ADEA, a plaintiff must allege she suffered from discrimination specifically because of her age. "A plaintiff alleging a violation under the ADEA has the ultimate burden of establishing 'that his employer took some adverse employment action…against him on the basis of his age' and that this action would not have been taken but for his age." *Weihaupt v. Am. Med. Ass'n,* 874 F.2d 419, 424 (7th Cir. 1989) (citations omitted); *accord Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993) (holding an employee has no claim under the ADEA unless the employee's age "actually played a role in [the employer's decision-making process] and had a determinative influence on the outcome").

A plaintiff cannot sustain a claim under the ADEA by alleging her employer discriminated against her because of some factor associated with her age, such as her pension benefits, salary or health. *See, e.g., Hazen Paper Co.,* 507 U.S. at 612 ("fir[ing] an employee in order to prevent his pension benefits from vesting … would not, without more, violate the ADEA"); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir.1993) (highly-compensated older employee "could not prove age discrimination even if he was fired simply because [his employer] desired to reduce its salary costs by discharging him"); *Weihaupt,* 874 F.2d at 425 ("a discharge based on [an employee's] poor health is not actionable under the ADEA"). As the Supreme Court has

explained, the ADEA generally "requires the employer to ignore an employee's age," but "it ***does not*** specify further characteristics that an employer must also ignore." *Hazen Paper Co.,* 507 U.S. at 612 (emphasis added).

In Count II of her Complaint, Plaintiff does not allege that Mariano's discriminated against her because of her age. Instead, she alleges the Company discriminated against her because of her ***arthritis***, which she maintains is related to her age. Her legal theory of liability is that Mariano's discriminated against her by denying her "request for a reasonable accommodation based on her disability based on her age." (Dkt. 1 at ¶ 137). *See also*, Dkt. 1 at ¶ 133 ("Her disability, arthritic hip…is also related to her age"); ¶ 134 ("Her disability related to her arthritic hip and her age"); ¶ 140 ("her disability related to her age"). These allegations do not state a claim under the ADEA, because Plaintiff does not contend Mariano's discriminated against her specifically because of her age, as opposed to her arthritis. *See, e.g., Weihaupt,* 874 F.2d at 425 (holding "a discharge based on [an employee's] poor health is not actionable under the ADEA").

Moreover, the entire basis for Plaintiff's claim in Count II is that Mariano's allegedly "failed to accommodate" her age-related disability. (Dkt. 1 at p. 21) ("Count II – Failure to Accommodate, Disability Related to Age") (*See also*, Dkt. 1, ¶¶ 131, 135, 138 and 140). This is insufficient to state a claim, because the ADEA does not require employers to make reasonable accommodations for an employee's age. *See, e.g., Johnson v. ExxonMobil Corp.,* 426 F.3d 887, 893 (7th Cir. 2005) ("the standard for an ADEA claim is more exacting than the standard for [an] ADA claim" because "the ADEA does not allow for 'reasonable accommodation'").

### B. Plaintiff Fails to State a Claim under the ADA in Count II, because she Does Not Allege she is "Disabled"

To the extent Plaintiff is trying to plead a duplicative claim for disability discrimination under the ADA in Count II of her Complaint, she has failed. As explained above, Plaintiff's

12

allegations do not establish that her arthritis qualifies as a "disability" under the ADA. (*Supra.*, pp. 6-9). To the contrary, the exhibits attached to her Complaint reveal that she is able to stand for 3-5 hours, demonstrating that arthritis does not "substantially" limit her major life activities. (*Id.*).

If Plaintiff is claiming that her ***age alone*** renders her disabled, then that theory will not work, either. To accomplish that, Plaintiff would need to establish that her age is a physical or mental impairment that substantially limits her major life activities. *See* 42 U.S.C. § 12102(2); *Moore,* 221 F.3d at 950-52. But that would cut directly against the applicable regulations, which dictate "[a]dvanced age, in and of itself, is not an impairment" under the ADA. 29 C.F.R. § 1630.2(h) app. The idea that "age" could be a "disability" is also contrary to the purpose and intent behind the ADEA. Even if that were a viable theory (and it is not), Plaintiff has failed to allege facts that would show her age substantially limited any of her major life activities.

### C. <u>Count II Cannot Survive as a "Hybrid" ADEA-ADA Claim</u>

If Plaintiff intended to state a "hybrid" claim – mixing and matching elements of an ADEA claim with an ADA claim – then Count II fails as a matter of law. The two statutes are separate and distinct, and cover entirely different claims. *See, e.g., Luce v. Dalton,* 166 F.R.D. 457, 461 (S.D. Cal.), *aff'd,* 167 F.R.D. 88 (S.D. Cal. 1996) (holding "Congress chose to pass entirely separate legislation, providing for an entirely different basis for relief to persons who believe they have been discriminated against in employment based upon their age or disability"). A plaintiff cannot selectively "mix and match" theories of liability and recovery under the ADEA and ADA and combine them into one hybrid claim. *Id.* There is simply no cause of action under either the ADEA or ADA for "age-plus-disability" discrimination. *Id.* ("there does not exist in the law [a] theor[y] … of 'age-plus-disability' discrimination under the ADEA …").

Nearly every court to consider this issue has "almost unanimously concluded that age-plus claims under the ADEA do not exist." *Thompson v. City of Columbus,* 2014 WL 1814069, at *10

13

(S.D. Ohio May 7, 2014) (collecting cases).[3] The Supreme Court has concluded that the ADEA does not authorize a mixed-motive age discrimination claim. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175 (2009) ("Our inquiry therefore must focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim. It does not."). As the Seventh Circuit instructs, mixed-motive theories of liability "are always improper in suits brought under statutes [like the ADEA] without language comparable to the Civil Rights Act's authorization of claims that an improper consideration was 'a motivating factor' for the contested action." *Serafinn v. Local 722*, 597 F.3d 908, 915 (7th Cir. 2010). Thus, to the extent Plaintiff is trying to assert a hybrid "age-plus-disability" theory, Count II fails to state a claim upon which relief can be granted.

### III. PLAINTIFF'S RETALIATION CLAIMS (COUNTS III – IX) MUST BE DISMISSED BECAUSE SHE DID NOT INCLUDE THEM IN HER CHARGE OF DISCRIMINATION

In Counts III-IX of her Complaint, Plaintiff alleges seven (7) retaliation claims that were never included in the Charge of Discrimination that she dually-filed with the EEOC and IDHR (her "Charge"). Plaintiff's retaliation claims ***are not*** premised on, or allegedly in response to, her filing of that Charge. Rather, her claims are based on purportedly retaliatory conduct that allegedly occurred ***prior to*** December 27, 2013, the date she filed her Charge. Because Plaintiff failed to exhaust her administrative remedies, her retaliation claims are barred and Counts III-IX must be dismissed.

It is well settled that a plaintiff must exhaust her administrative remedies before pursuing claims under the ADA, ADEA or Title VII. A plaintiff may "bring only those claims that were

---

[3] *See also, Block-Victor v. CITG Promotions, L.L.C.,* 665 F. Supp. 2d 797, 808 (E.D. Mich. 2009) (refusing to recognize an "age plus sex" discrimination claim under the ADEA); *Smith v. Bd. of County Comm'rs of Johnson County,* 96 F. Supp. 2d 1177, 1187 (D. Kan. 2000) ("age-plus" theory of liability under the ADEA not recognized); *Luce v. Dalton,* 166 F.R.D. 457, 460-61 (S.D. Cal. 1996) ("age-plus" claims not recognized under ADEA); *Kelly v. Drexel Univ.,* 907 F.Supp. 864, 875 n. 8 (E.D. Pa. 1995) (rejecting an "age-plus" theory of liability under the ADEA); *but see, Suggs v. Cent. Oil of Baton Rouge, LLC,* 2014 WL 3037213, at *9 (M.D. La. July 3, 2014).

included in her EEOC charge." *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 481-83 (7th Cir. 1996); *accord Butler v. Illinois Dept. of Transp.,* 533 F. Supp. 2d 821, 825 (N.D. Ill. 2008) (dismissing retaliation claims omitted from the plaintiff's EEOC charge). As the Seventh Circuit explains, "[t]his rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute … and of giving the employer some warning of the conduct about which the employee is aggrieved." *McKenzie,* 92 F.3d at 481-83. Accordingly, "allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Id.*

Here, Plaintiff failed to assert any retaliation claims in her Charge – either as originally filed in December of 2013, or as amended more than a year later. (Dkt. 1, Exs. A-B). Plaintiff tacitly acknowledges her retaliation claims should be barred, which is why she includes legal argument in Paragraph 20(k) of her Complaint, citing *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1988), and *Malhotra v. Cotter & Co.,* 885 F.2d 1305 (7th Cir. 1989). (Dkt. 1, p. 5). Plaintiff cites *Steffen* and *Malhotra* for the proposition that an employee is not required to file a separate administrative charge as a prerequisite to filing a lawsuit "complaining about retaliation for filing the *first* charge." *Id.*[4]

The exception articulated in *Steffen* and *Malhotra* does not apply to Plaintiff's retaliation claims. Each of the retaliation claims Plaintiff asserts in Counts III-VIII are based on events that occurred ***well before*** she filed her original Charge.

---

[4] This exception to the statutory "exhaustion of administrative remedies" mandate acknowledges that: (i) a plaintiff might "naturally be gun shy about inviting further retaliation by filing a second charge" if she was retaliated against for filing her first charge; and (ii) logistically, a plaintiff cannot include a claim for retaliation in her original charge if the act of retaliation occurs after (and because) she files the charge. *Id.*

According to Plaintiff, Mariano's retaliated against her because she requested an accommodation for her arthritis. (Dkt. 1, ¶¶ 156, 174, 184, 189, 195, 201). Plaintiff made that request on April 22, 2013. (*Id.*, ¶ 77). Plaintiff then alleges she suffered four (4) distinct instances of purported "retaliation" in response to her request:

   i. On May 28, 2013, she received "threats" and "intimidation" during the meeting to discuss her request for an accommodation. (*Id.*, ¶¶ 177-191).

   ii. On June 7, 2013, she was suspended without pay. (*Id.*, ¶¶ 141-176).

   iii. On June 17, 2013, her employment was terminated. (*Id.*, ¶¶ 192-203).

   iv. On October 3, 2013, her employment was reinstated, and she was made to feel "uncomfortable." (*Id.*, ¶¶ 204-211).

Thus, the supposed "retaliation" of which Plaintiff complains occurred several months before she filed her Charge on December 27, 2013. (Dkt. 1, ¶ 77, Ex. A). Plaintiff openly discusses the events surrounding her request for an accommodation in her Charge, but omits any reference to "retaliation." (*Id.* at Ex. A). Nor did she mention "retaliation" when she filed her *Amended Charge* in February of 2015, more than a year later. (*Id.* at Ex. B).[5]

Because Plaintiff's retaliation claims are not based on her filing an administrative Charge of Discrimination, but rather conduct that ***preceded*** her filing of a Charge (and Amended Charge), she is precluded from asserting those retaliation claims for the first time in this lawsuit. *See, e.g., McKenzie,* 92 F.3d at 483 (dismissing omitted retaliation claims that "could have been" included in administrative charge); *Steffen* 859 F.2d at 544-45 (same). Counts III-IX should be dismissed.[6]

---

[5] Even the retaliation claim set forth in Count IX of the Complaint could have been included in her Amended Charge. Although she includes one conclusory allegation in Count IX – claiming Mariano's retaliated against her for filing her original Charge – Plaintiff fails to explain why she neglected to include that claim more than a year later, when she filed her Amended Charge. (Dkt. 1, at ¶ 211).

[6] To the extent Plaintiff's retaliation claims are dependent upon her ability to state a valid ADA or ADEA claim, Counts III-IX should be dismissed for the same reasons discussed above. (*Supra.*, pp. 6-9).

16

### IV. PLAINTIFF'S RETALIATION CLAIM IN COUNT IX IS ALSO INSUFFICIENTLY PLED

Plaintiff's retaliation claim set forth in Count IX of her Complaint should be dismissed on the additional ground that it is not sufficiently pled. Specifically, Plaintiff never alleges what Mariano's supposedly did to retaliate against her for filing her original Charge. She simply proclaims Mariano's made her feel "uncomfortable" after she filed her original Charge, prompting her to resign. (*Id.* at ¶¶ 207-08). Such conclusory allegations are insufficient to survive a motion to dismiss under Rule 12(b)(6). *See, Twombly,* 550 U.S. at 555.

### V. PLAINTIFF'S SO-CALLED "WILLFUL" ADEA CLAIM (COUNT X) FAILS TO STATE A VALID LEGAL CLAIM

In Count X of her Complaint, Plaintiff attempts to state a claim against Mariano's for something she terms "[w]illful under the ADEA." This claim should be dismissed for several reasons. *First*, there is no cause of action for "willfulness" under the ADEA. Although § 626(b) of the ADEA states an employer's "willful violations" of the act trigger liability for "liquidated damages," the statute does not create a separate cause of action for "willful violations." 29 U.S.C. § 626(b). Section 626(b) merely affords employees another remedy; it does not give rise to a new cause of action. *Second*, as explained previously, Plaintiff fails to allege she was discriminated against because of her ***age***, as opposed to her ***arthritis.*** (*Supra.*, pp. 10-12). Therefore, she cannot possibly have any type of claim (willful or otherwise) for age-discrimination under the ADEA. *See, e.g., Weihaupt v. Am. Med. Ass'n,* 874 F.2d 419, 424 (7th Cir. 1989). Count X of her Complaint should be dismissed accordingly.

### CONCLUSION

WHEREFORE, for all of the reasons set forth above, Mariano's respectfully requests that this Court enter an Order dismissing Plaintiff's Complaint, in its entirety, with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: October 18, 2017  Respectfully submitted,

**ROUNDY'S ILLINOIS, LLC, d/b/a Mariano's, Defendant**

By: */s/ Christopher S. Griesmeyer*
 One of Its Attorneys

Christopher S. Griesmeyer (ARDC No. 6269851)
Adam C. Maxwell (ARDC No. 6306534)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
(312) 428-2750
(312) 332-2781 (Fax)
cgriesmeyer@grglegal.com
amaxwell@grglegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2017, I electronically filed the foregoing *Memorandum of Law in Support of Defendant's Rule 12(b)(6) Motion to Dismiss,* with the Clerk of the Court via the CM/ECF System, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them:

| | |
|---|---|
| L. Steven Platt (#3122005) | Scott A. Mayer (#1802410) |
| Robbins, Salomon & Patt, Ltd. | Attorney at Law |
| 180 N. LaSalle Street, Suite 3300 | 5599 S. Hanover Way |
| Chicago, Illinois 60601 | Greenwood Village, CO 80111-3730 |
| lsplatt@rsplaw.com | scottm2525@yahoo.com |

    /s/   *Christopher S. Griesmeyer*
Christopher S. Griesmeyer (ARDC No. 6269851)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
Bus: (312) 428-2750
Fax: (312) 332-2781
cgriesmeyer@grglegal.com