**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RUTH M. MARION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 17 – cv – 5792** |
| | ) | |
| ROUNDY'S ILLINOIS, LLC, | ) | |
| d/b/a Mariano's, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S AMENDED COMPLAINT**

The Defendant, Roundy's Illinois, LLC d/b/a Mariano's ("Defendant," "Mariano's" or the "Company"), by and through its undersigned counsel, respectfully submits this Answer to Plaintiff's Amended Complaint (Dkt. No. 25).[1]

1.      This is a case in which the plaintiff, Ruth MARION, a 57-year old "Front End" supervisor at MARIANO'S, was suspended on June 7, 2013 and fired on June 17, 2013 in retaliation for asking for an accommodation due to her Osteoarthritic hip on April 22, 2013, May 9, 2013 and May 28, 2013, that eventually required her to get hip replacement surgery.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

2.      Her doctor, Orthopedic Surgeon, Dr. Joseph A. Mies, of Advocate Condell Medical Center, a Level I, Trauma Center, in Libertyville, IL, diagnosed her with Osteoarthritis on April 18, 2013, and advised MARIANO'S by letter dated April 22, 2013, and again by phone interview on May 9, that MARION'S Osteoarthritis of the right hip is substantial, significantly

---

[1] Mariano's was Plaintiff's employer, and is the sole defendant in this Title VII lawsuit. On October 19, 2017, this Court entered an Order dismissing The Kroger Co. ("Kroger") as a defendant in this lawsuit. (Dkt. No. 19). Although the amended complaint inadvertently lists Kroger as a defendant, Plaintiff asserts no claims against that corporate entity (no could she, as Plaintiff was never employed by Kroger). Defendant thus attributes the inclusion of "Kroger" in the caption as scrivener's error on the part of Plaintiff's counsel. This answer, and the attendant affirmative defenses, are submitted solely by and on behalf of Roundy's Illinois, LLC d/b/a Mariano's. Kroger does not – and need not – submit any answer to Plaintiff's amended complaint.

debilitating and permanent and that it impacted her ability to complete the essential functions of her job. Ex. D, and E, at 5, 8 n.3.

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

3.      MARIANO'S corporate HR person at ROUNDY'S headquarters office in Milwaukee, Susan Eutizzi, Director of Compensation & Benefits, in an e-mail dated May 10, 2013, to MARION'S Store Service Operations Manager, Mary Kay Cannistra, recognized that MARION'S medical provider had been contacted and had confirmed that MARION has a permanent health condition that impacts her ability to complete the essential functions of her job and that her doctor had placed restrictions on her of no standing for more than five hours per eight hours shift, occasional lifting and no pushing or pulling. Exh. E, at 5.

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

4.      But thereafter, MARIANO'S went off the rails.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

5.      MARION'S accommodation request and request for an interactive discussion on what kind of accommodation was denied in a May 28, 2013 meeting between MARION, Store Manager Nick Durso (age 45 not disabled) and Cannistra (not disabled, age 52).

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

6.      The accommodation, that she be allowed to sit for periods of the day and do scheduling work that needed to be done, and work with other managers on computer training so that she would not be required to stand for the full eight hours of her shift, was denied.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

2

7.      In the meeting where her request was rejected, her full-time job status was threatened and so were her health insurance benefits.

**ANSWER:**      Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

8.      Her request was denied despite the fact that just before she made the request, a younger worker, Julie Swieca (DOB: 3/1972) with a temporary disability was treated differently and given a sustained period of light-duty work by moving her to the Cake Department where she was able to sit all day.

**ANSWER:**      Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

9.      But for her age 57, or alternatively because of her disability, her Osteoarthritic right hip, MARION was denied an accommodation, was suspended, terminated and then when reinstated, was harassed and forced to quit after she returned to work.

**ANSWER:**      Defendant denies all allegations asserted in this paragraph.

10.      The stated reason for the suspension and termination was that she received a discounted price from a co-worker on deli meat she paid for that she purchased at MARIANO'S.

**ANSWER:**      Defendant admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her employment for the sole reason that she had stolen from the Company.  Defendant denies all remaining allegations asserted in this paragraph.

11.      While she was eventually reinstated through the work of her union on October 3, 2013, she was reinstated without back pay or benefits.

**ANSWER:**      Defendant admits that Plaintiff, UFCW Local No. 881, and the Company entered into a "Last Chance Agreement" on or about October 3, 2013, pursuant to which Plaintiff was allowed to return to work.  Defendant denies all remaining allegations asserted in this paragraph.

12.     She was harassed continuously from that point until she eventually was forced to quit on April 30, 2015.

**ANSWER:**     Defendant denies all allegations asserted in this paragraph.

13.     While this Amended Complaint is organized into five counts, MARION brings this complaint complaining of discrimination and retaliation under three categories: (i) age-based discrimination under the Age Discrimination in Employment Act (ADEA); (ii) disability-based discrimination under the Americans With Disabilities Act (ADA) as amended by the ADA Amendments Act of 2008 (ADAAA); and (iii) statutory retaliation under the discrimination Acts.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

14.     This Complaint is brought by MARION, under the Americans With Disabilities Act ("ADA") of 1990, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101, 12102(1); 12102(2)(A)-(B); 12102(4)(B); 12102(4)(E)(i)-(ii); 12111(8); 12112(a); 12201; 12203(a); 12211; 12114(a); (b)(5)(A) for the acts of failing to accommodate MARION on her requests for accommodation due to her arthritic right hip on April 23, 2013, and in her meeting with Store Manager Nick Durso ("Durso") (45, not-disabled) and Service Operations Manager Mary Kay Cannistra ("Cannistra") through a note submitted by her doctor of that date, a follow-up conversation of her doctor with corporate HR on May 9, 2013, and a meeting on May 28, 2013 with Cannistra and Store Manager Durso.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

15.     They engaged in acts of retaliation by suspending her on June 7, 2013, because she made these requests, and then terminating her on June 17, 2013, in violation of the anti-retaliation provisions of Title VII, of the Civil Rights Act of 1964 ("Title VII,") *as amended*, 42 U.S.C. §§ 2000e-3(a); 2000e−5(g)(1); 12117(a); 12203(a)-(b), as applied to the ADA and ADAAA (*see* 29 C.F.R. § 1630.12(a) (explaining retaliation and coercion); 42 U.S.C. § 12203(a) (defining retaliation)).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

16. They then harassed her continually after she was reinstated on October 3, 2013 until she could no longer take it and she quit on April 30, 2015, because no reasonable person would be expected to continue working under the circumstances.

**ANSWER:** Defendant denies all allegations asserted in this paragraph.

17. They did not act on their own, they were prodded or directed to do this by either Eutizzi or someone directing Eutizzi from Corporate.

**ANSWER:** Defendant denies all allegations asserted in this paragraph.

18. As MARION was 57-years old at the time, she alternatively seeks to redress MARIANO'S violation of her rights under the Age Discrimination in Employment Act of 1967, the "ADEA," specifically, 29 U.S.C. §§ 621, 623(f)(2)(B), 626(b), 630(b) and alleges in the alternative that but for her age, 57, she would not have been denied an accommodation due to her hip on April 22, 2013, and May 28, 2013, and but for her age, would not have been retaliated against by being suspended on June 7, 2013, terminated on June 17, 2013.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

19. Jurisdiction also arises under the regulations adopted pursuant to the ADA, ADAAA, and ADEA, 29 C.F.R. §§ 1625, 1630.2(h)(1)-(2), 1630.2(j)(1)(vi), 1630.2(m), 1630.2(n), 1630.12(a).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating

allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

20.     Jurisdiction arises under the anti-retaliation provisions of Title VII, of the  Civil Rights Act of 1964 ("Title VII,") *as amended*, 42 U.S.C. §§ 2000e-3(a); 2000e–5(g)(1); 12117(a); 12203(a)-(b), as applied to the ADA and ADAAA (*see* 29 C.F.R. § 1630.12(a) (explaining retaliation and coercion); 42 U.S.C. § 12203(a) (defining retaliation)) and the anti-retaliation provisions of the ADEA, 29 U.S.C. § 623(d), for the acts of harassment engaged in by MARIANO'S against MARION upon her reinstatement on October 3, 2013, through the date of her constructive discharge on April 30, 2015, for (a) asserting her rights under the ADA and ADAAA by requesting an accommodation based on her Osteoarthritic right hip on April 23, May 9, 2013 and May 28, 2013 and challenging her suspension and termination in retaliation for asserting her rights under the ADA and ADAAA and thereafter being harassed upon reinstatement on October 3, 2013, through her constructive discharge on April 30, 2015; and (b) alternatively, but for her age, 57, being harassed for having asked for an accommodation for her arthritic right hip on April 23, May 9, 2013 and May 28, 2013 and challenging her suspension and termination in retaliation for requesting an accommodation and thereafter being harassed upon reinstatement on October 3, 2013, through her constructive discharge on April 30, 2015 but for her age.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

21.     Jurisdiction also arises under the retaliation provisions of 42 U.S.C. § 12203(a), which applies to "any individual," and therefore under this provision MARION need not prove disability within the meaning of the ADA or ADAAA to sustain a retaliation claim against MARIANO'S under the ADA or ADAAA although she can and alleges that she was as indicated above and below herein.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

6

22.     Jurisdiction also arises under 42 U.S.C. § 1981a(c)(2) (limits do not apply to back pay or front pay, for claims under 42 U.S.C. § 1981 which is awarded under 42 U.S.C. § 2000e–5(g)(1.))

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

23.     Jurisdiction also arises under 42 U.S.C. § 1981a(2) (providing for recovery of compensatory and punitive damages against defendant who violates § 102(b)(5) of ADA, 42 U.S.C. § 12112(b)(5).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

24.     Jurisdiction also arises under the willfulness provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 as adopted and applicable to the ADEA (*see Lorillard v. Pons*, 434 U.S. 575, 582 (1978) ("[Other than] those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA.")).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

25.     Further, all jurisdictional prerequisites required to file this lawsuit under the ADA, ADAAA and the ADEA as well as the retaliation provisions under those statutes, have been met to wit:

(a)     On August 6, 2013, MARION filed a charge of discrimination alleging discrimination under the ADA, ADAAA and the ADEA which was perfected by the Illinois Department of Human Rights ("Department" or "IDHR") and by a work sharing agreement

between the Department and the Equal Employment Opportunities Commission ("EEOC")(hereafter collectively simply referred to as her "IDHR charge") was cross-filed and perfected at both agencies;

(b)     The charge was filed at the Department as of December 27, 2013 (*see* Exh. A, at 3-6);

(c)     The charge was perfected and stamped "received" by the IDHR and thus was perfected at both the IDHR and the EEOC on December 30, 2013 (*see* Exh. A, at 3);

(d)     The charge was assigned EEOC charge No. 21B-2013-02534 (*see* Exh. A at 1);

(e)     The charge pursuant to the work-sharing agreement between agencies was filed within 300 days of the date of the last act of discrimination, retaliation and harassment, which was and were on-going through the date MARION was terminated and continued past that date and beyond when she was reinstated until she left on a constructive discharge in May of 2015;

(f)     On February 4, 2015, the charge was technically amended to correct the Defendant's name (*see* Exh. B);

(g)     MARION asked for and received a Right-to-Sue letter from the EEOC dated May 22, 2017 (Exh. A, at 1-2), a copy of which is attached hereto along with the charge of discrimination appended to it, as Exh. A, at 3-6;

(h)     Plaintiff MARION adopts and realleges the factual allegations contained in Exh. A and B, and reiterates the facts stated therein as if fully set forth in this Amended Complaint;

(i)     This lawsuit was filed on August 9, 2017, within 90 days (on the 76th day) of the date of receipt of the Right-to-Sue letter which was issued on May 22, 2017 (Exh. A at 1);

(j)     MARION alleges further acts of retaliation in this Complaint as more fully set forth herein, which are like and related to the allegations of discrimination contained in her charge (Exh. A) which occurred following her reinstatement on October 3, 2013, which continued until her constructive discharge on April 30, 2015;

(k)     These like and related allegations of retaliation were on-going and were directly related to her: (1) requesting an accommodation due to her disability (Osteoarthritic right hip) on or about April 23, 2013; (2) requesting an accommodation due to her disability (Osteoarthritic right hip) in her meeting with Durso and Cannistra on May 28, 2013; (3) her being reinstated through the collective bargaining process on October 3, 2013, despite being fired for requesting an accommodation on both dates due to her disability (Osteoarthritic right hip) from October 3, 2013 through April 30, 2015 when she constructively discharged herself.

(l)     Alternatively, these like and related allegations of retaliation were on-going and were directly related to her age 57 as but for her age she would not have been discriminated against and retaliated against for having: (1) requested an accommodation due to her Osteoarthritic right hip diagnosed by her doctor on April 18, 2013, on or about April 22, 2013; (2) requested an

accommodation again by conversation between her doctor and corporate HR on May 9, 2013 as more fully set forth below; (3) requested it again due to her Osteoarthritic right hip in her meeting with Durso and Cannistra on May 28, 2013; (4) upon being reinstated on October 3, 2013, despite being fired for requesting an accommodation on both dates due to her Osteoarthritic right hip, from October 3, 2013 through April 30, 2015 when she constructively discharged herself because of harassment that would not have occurred but for her age, 57 and retaliation but for her age.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

26. MARION is not required to exhaust her administrative remedies to allege these additional claims of retaliation in this Complaint under authority of the Seventh Circuit's precedent in *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 545 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989), as the subsequent retaliation involved situations where the alleged retaliation arose after the charge of discrimination had been filed; in such cases, only a single filing is necessary to comply with the intent of Title VII, the ADA, ADAAA and ADEA; a double filing "would serve no purpose except to create additional procedural technicalities." *Id.*; *see also Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) ("[W]e join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge"); *Fentress v. Potter*, No. 09-C-2231, 2012 U.S. Dist. LEXIS 62484, at *7-8 (N.D. Ill. May 4, 2012) (concluding that a plaintiff who had filed a claim for retaliation resulting from the filing of an initial EEOC charge had not failed to exhaust her administrative remedies even though the alleged retaliation took place two years after the initial EEOC charge was filed); *Turpin v. WellPoint Cos*., No. 3:10CV850 HEH, 2011 U.S. Dist. LEXIS 56000, at *3–4, 10 (E.D. Va. May 25, 2011) (concluding that even though the alleged retaliation occurred three years after the filing of a discrimination charge with the EEOC, the plaintiff was "free to raise this claim for the first time in federal court.")

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

27. Jurisdiction also arises under 28 U.S.C. § 1331, as the district courts have original jurisdiction of all civil actions under the Constitution, laws, or treaties of the United States.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

28. MARION also seeks damages and to recover for constructive discharge and acts of retaliation that occurred after she was reinstated, because the exercise of collective bargaining rights has no impact on the ability of a party to pursue their rights under the civil rights statutes (*see Alexander v. Gardner Denver,* 415 U.S. 36 (1974)).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

29. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because:

(a) All of the Defendants "reside" in this jurisdictional district, in the sense that they all conduct substantial business and engage in significant interstate commerce out of this jurisdictional district of a sufficient kind and amount to establish the minimum contacts necessary to subject them to the personal jurisdiction of this court;

(b) Defendant ROUNDY'S ILLINOIS, LLC, ("ROUNDY'S") is a Wisconsin Limited Liability Corporation, dba MARIANO'S doing business in this court's jurisdictional district;

(c) Defendant ROUNDY'S is a division of THE KROGER COMPANY ("KROGER"), an Ohio Corporation that is registered to do business in Illinois and does business through MARIANO'S, the ROUNDY'S dba.;

(d) MARIANO'S, is the dba of ROUNDY'S doing business here in this jurisdictional district; and

(e) All of the events or omissions giving rise to Plaintiff's claims occurred here in this jurisdictional district.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating

allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

30.     MARIANO'S is an "employer" under the ADAAA, 42 U.S.C. § 12111 (5)(a) in that at all times relevant it was engaged in an industry affecting commerce and had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and had engaged in an industry affecting commerce.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant admits only that Mariano's previously employed Plaintiff, and denies all other allegations in this paragraph, and expressly denies any and all wrongdoing and liability on its part whatsoever.

31.     MARIANO'S is an "employer" under the ADEA, 29 U.S.C. § 630 (b) in that it was engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant admits only that Mariano's previously employed Plaintiff, and denies all other allegations in this paragraph, and expressly denies any and all wrongdoing and liability on its part whatsoever.

32.     MARIANO'S is a chain of grocery stores in the Chicagoland area.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

33.     MARIANO'S currently operates 41 grocery stores in the Chicago area and vicinity.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

34.     MARIANO'S    is   the   Chicago   area   brand   or   dba   of   Defendant
ROUNDY'S.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

35.     Defendant ROUNDY'S ILLINOIS, LLC, is a Wisconsin Limited Liability
Corporation, licensed to do business here in Illinois as a foreign corporation.

**ANSWER:**    Defendant admits that Roundy's Illinois, LLC is a Wisconsin Limited

Liability Company, authorized to conduct business in Illinois.

36.     It is doing business here as MARIANO'S.

**ANSWER:**    Defendant admits that Roundy's Illinois, LLC does business in the state of

Illinois under the trade name "Mariano's."

37.     It is a division of Defendant KROGER.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

38.     KROGER is an Ohio Corporation licensed to do business in Illinois as a foreign
corporation.

**ANSWER:**    Defendant admits that The Kroger Co. is a publicly-traded company

organized under the laws of the state of Ohio.

39.     KROGER operates a division known as ROUNDY'S ILLINOIS, LLC.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

40.     As ROUNDY'S ILLINOIS LLC, does business in Illinois as MARIANO'S,
KROGER does business in Illinois as MARIANO'S through its ROUNDY'S ILLINOIS, LLC,
division.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

41.     KROGER now owns and operates 2,774 grocery stores in 35 states and the District
of Columbia.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

42.     Because of the purchase of ROUNDY'S, KROGER now owns and operates as ROUNDY'S in Illinois and Wisconsin.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

43.     All of the Defendants are "Employers" required to comply with the ADA, the ADAAA, Title VII and the ADEA. 42 U.S.C. §§ 12111 (2) and (5)(a); 2000e(b); and 29 U.S.C. § 630 (b).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.  Answering further, Defendant admits only that Mariano's previously employed Plaintiff, and denies all remaining allegations in this paragraph.

44.     The Defendants are "employees" within the meaning of the ADA, ADAAA and ADEA. 42 U.S.C. §§ 12111(4); 2000e(f); and 29 U.S.C. § 630 (f).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.  Answering further, Defendant admits only that Mariano's previously employed Plaintiff, and denies all remaining allegations in this paragraph.

45.  Before she was suspended on June 7, 2013, MARION worked as a "Front End" supervisor at MARIANO'S. *See, also,* Exh. A, at ¶¶ I (B)(3) at 2; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents.  Defendant denies the allegations asserted in this paragraph.

46.     Before she was terminated on June 17, 2013, MARION worked as a "Front End" supervisor at MARIANO'S. *See, also,* Exh. A, at ¶¶ I (B)(3) at 2; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents.  Defendant denies the allegations asserted in this paragraph.

47.     Before she requested an accommodation on April 22, 2013, MARION worked as a "Front End" supervisor at MARIANO'S. *See, also,* Exh. A, at ¶¶ I (B)(3) at 2; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents.  Defendant denies the allegations asserted in this paragraph.

48.     Before she requested an accommodation from MARIANO'S on April 22, 2013, consisting of being allowed to sit and stand intermittently with no standing for more than a total of five hours within an eight hour work day (*see* Exh. A, at ¶ I (B) 4), MARION was meeting her employer's legitimate expectations in the performance of her job, in accordance with 42 U.S.C. §§ 12102(2)(a), 12111(8) and 29 C.F.R. § 1630.2(j). *See, also,* Exh. A, at ¶¶ I (B)(3) at 2; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

49.     Before she had her accommodation meeting with Store Manager Rick Durso (age 45, not disabled) and the store Service Operations Manager, Mary Kay Cannistra (not disabled, age 52) on May 28, 2013, MARION was meeting her employer's legitimate expectations in the performance of her job. *See* Exh. A, at ¶¶ I (B)(3) at 2; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

50.     After her May 28, 2013 meeting where her accommodation request was denied and before she was suspended on June 7, 2013 allegedly for "discounting," she was meeting her employer's legitimate expectations in the performance of her job. *See* Exh. A, at ¶¶ I (B)(3) at 2; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts, states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

51.     Before she was terminated on June 17, 2013, allegedly for "discounting," she was meeting her employer's legitimate expectations in the performance of her job. *See* Exh. A, at ¶¶ I (B)(3) at 2; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

52.     When she returned to work on October 3, 2013, MARION was reinstated to a Level 4, Bakery Worker as an Assistant Manager.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

53.     She was qualified for this position.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

54.     From the time she was reinstated on October 3, 2013 through the date on which she was constructively discharged on April 30, 2015, she met her employer's legitimate expectations in the performance of her job.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

55. At all times relevant before any of the illegal acts alleged, MARION was therefore was a "qualified individual" as defined by the ADAAA, as set forth in 42 U.S.C. §§ 12102(2)(a), 12111(8) and 29 C.F.R. § 1630.2(j). *See, also,* Exh. A, at ¶¶ I (B) 3 at 1; III (B) 3 at 2; V (B) 3 at 3.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.

56. From before April 22, 2013 when she first requested an accommodation, through May of 2015, when MARION constructively discharged herself, MARION was and is a person with a disability as defined by the ADAAA (arthritic hip) in that her Osteoarthritis substantially limits one or more of her major life activities as defined by 42 U.S.C. §§ 12102(2)(a), 12111(8) and 29 C.F.R. § 1630.2(j).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.

57. She has a record of such impairment as defined by 42 U.S.C. §§ 12111(8) and 12102(2).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.

58. She had a record of such impairment when she requested but was denied an accommodation on April 22 2013.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

59. She had a record of such impairment when her doctor spoke to corporate HR on May 9, 2013;

16

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

60. She had a record of such impairment when she requested and was denied an accommodation in her meeting on May 28, 2013.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

61. She had a record of such impairment when she was suspended on June 7, 2013.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

62. She had a record of such impairment when she was terminated on June 13, 2013.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

63. She had a record of such impairment when she was reinstated on October 3, 2013

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

64. She had a record of such impairment when she finally reinstated to work from October 3, 2013 through May of 2015 as a Level 4, Bakery Supervisor, a position she should have been placed in as an accommodation in May of 2013, if they were not going to permit her the sitting accommodation she and her doctor requested.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

65. She had a record of such impairment when she constructively discharged herself in May of 2015, in accordance with 42 U.S.C. § 12102(2).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.

66. Prior to her hip surgery, MARION'S doctor, Dr. Joseph Meis, diagnosed MARION with Osteoarthritis of the right hip on April 18, 2013, a condition he advised Susan Eutizzi, ROUNDY'S Director of Compensation & Benefits, in Milwaukee, on May 9, 2013, by phone, was substantial, significantly debilitating; he advised Eutizzi in that conversation that

MARION could not stand for more than five hours per shift, could only do occasional lifting (he placed no pound restriction, just a limited amount) and he directed no pushing or pulling.

      **ANSWER:**    Defendant objects to Plaintiff's argumentative mischaracterization of facts,

and denies the allegations asserted in this paragraph.

      67.    Her Osteoarthritis condition therefore constituted a disability under the ADAAA because it was disabling in that it affected her personal life and substantially limited one or more of her major life activities of walking, standing, bending, sitting and getting up from sitting, squatting and bending positions and from chairs as well as working as defined by 42 U.S.C. §§ 12102(2)(a), 12111(8) and 29 C.F.R. § 1630.2(j).

      **ANSWER:**    The allegations set forth in this paragraph state a legal conclusion to which

no response is required.  To the extent the allegations in this paragraph can be construed as stating

allegations of fact, Defendant denies all such allegations.

      68.    Since her hip surgery, the prescribed medical treatment for the condition, the hip replacement surgery and the artificial hip that she now has, was and is still disabling under the ADAAA because it affects her personal life and creates a physical impairment for her personally that substantially limits one or more of her personal major life activities as defined by 42 U.S.C. §§ 12102(2)(a), 12111(8) and 29 C.F.R. § 1630 .2(j), and as described in the EEOC TECHNICAL MANUAL at II-4, in that:

      (a)    Since the surgery, MARION still must restrict physical movements at all times to prevent problems with the hip implant for the rest of her life;

      (b)    Because of the hip joint is now artificial, her hip no longer is as stable as it was before the implant and before she developed the Osteoarthritis condition;

      (c)    She must always guard against the possibility of the ball of the ball-and-socket in the hip replacement dislocating which if it did, could cause internal bleeding which might be life threatening;

      (d)    If the ball-and-socket dislocate, the artificial hip would have to be removed and replaced;

      (e)    As people advance in age, every surgery, every time they are placed under anesthetic, is potentially either life threatening or could permanently affect their cognitive functioning so she must work to avoid having to have the hip replaced again to avoid further surgery and the need to be put under further anesthetic;

     (f)     She can no longer engage in recreational or physical activities that put stress on the artificial hip and is not allowed to do those activities ever again, to protect against damaging the hip replacement joint;

     (g)     She must limit certain activities to prevent a hip dislocation for the rest of her life;

     (h)     She must also avoid certain types of physical positions with her legs;

     (i)     She can never again cross her legs;

     (j)     She can never again cross her legs to bring her foot towards her body;

     (k)     She has to alter the way in which she gets dressed every day;

     (l)     Her condition has made it more difficult for her to dress and change clothes and put on her socks;

     (m)     She has to sleep with a pillow between her legs to prevent them from crossing at night;

     (n)     She has to alter her forward bending to avoid bending her hip more than 90 degrees;

     (o)     She has to make sure that if her knee is below her hip joint at any time, she is in a safe position;

     (p)     She will always have trouble getting up from deep cushioned seats and low seats such as toilets.

     (q)     Her condition and surgery have thus permanently altered and limited her ability to engage in day-to-day tasks, and to live and work within the meaning of 42 U.S.C. §§ 12102(2)(a), 12111(8), and 29 C.F.R § 1630.2(j)(1)(vii).

     (r)     Her Ostearthritic hip therefore continues to constitute a disability as defined by the ADAAA.

     **ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.  Answering further, Defendant lacks any knowledge of Plaintiff's purported medical condition following her voluntary resignation from Mariano's.

69.     Even before she had the surgery, while working for MARIANO'S, her Osteoarthritic condition as described above had become so bad it substantially limited her major life activities of walking, standing, bending, sitting and getting up from chairs, sitting, squatting and bending positions as well as working without an accommodation thus making her disabled as defined by 42 U.S.C. §§ 12102(2)(a), 12111(8) and 29 C.F.R. § 1630 .2(j).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.

70.     Eutizzi admitted that MARION'S doctor diagnosed her with a permanent debilitating condition that affected her ability to perform the essential functions of her job by e-mail to Cannistra on May 10, 2013. *See* Exh. E, at 5.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts, states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

71.     MARION is thus a "qualified person with a disability" as described by the ADAAA and protected by the Act. 42 U.S.C. §§ 12102(2)(a), 12111(8) and 29 C.F.R. § 1630 .2(j) and as described in the EEOC TECHNICAL MANUAL at II-4.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.

72.     MARION was an "employee" protected by the ADAAA having been hired by Defendant MARIANO'S on May 25, 2011, shortly after MARIANO'S opened the new store in Palatine Illinois.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations.

73. She was "Front End Supervisor."

**ANSWER:** Defendant admits only that during the course of Plaintiff's employment at Mariano's, she worked as an hourly employee in various departments, including the front end.

74. At the time of the events in question, MARION was 57 years old.

**ANSWER:** Defendant lacks sufficient information to either admit or deny the allegations set forth in this paragraph and, on that basis, the allegations are denied.

75. MARION worked at MARIANO'S Palatine store, located at 545 N. Hicks, Palatine, IL, 60074 which is in this jurisdictional district.

**ANSWER:** Defendant admits that Plaintiff worked at Mariano's Store No. 505, located in Palatine, Illinois.

76. MARION was an "employee" of the MARIANO'S as defined by the ADA, the ADAAA and the ADEA. 42 U.S.C. § 12111 (4); 29 U.S.C. § 630(f).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant admits only that Plaintiff was employed by Mariano's, and Defendant denies any and all liability or wrongdoing on its part whatsoever.

77. Before MARION was suspended on June 7, 2013 and terminated on June 17, 2013, because of her Osteoarthritic hip as more fully described in Exh. A, which is incorporated by reference and reiterated herein as if fully stated herein, she was an individual with a disability within the meaning of the ADA and ADAAA, 42 U.S.C. §§ 12102(1)(A)-(C); 12102(4)(D); 29 C.F.R. §§ 1630.2(h)(1)-(2), 1630.2(j)(1)(ii)); 1630.2(m) as follows:

(f) She had a physical impairment (Osteoarthritic right hip) that substantially limited one or more of her major life activities, specifically, standing, walking, sitting, getting dressed, bending, working in her job as a Front Line Supervisor, which meet the definition of major life activities as defined by 42 U.S.C. §§ 12102(2)(a), 1211(8) and 29 C.F.R. § 1630.2(j);

(g) She had a record of such impairment having developed the Osteoarthritic condition over time until it became so bad she needed an accommodation in the spring of 2013,

21

and it was affecting major life activities as described in 68 (a) above, in accordance with 42 U.S.C. §§ 12111(8) and *Serednyj v. Beverly Healthcare, LLC,* 656 F. 3e 540 (7th Cir. 2011);

(h)     She had a record of such impairment when she was suspended on June 7, 2013, as defined by 42 U.S.C. § 12102(2);

(i)     She had a record of such impairment when she was terminated on June 17, 2013, as defined by 42 U.S.C. § 12102(2);

(j)     Even if at the time her medical condition did not rise to the level of a disability under the ADA, the prescribed medical treatment for her arthritic him, sitting

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant objects to Plaintiff's argumentative mischaracterization of facts, denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.


78.     Throughout her employment at MARIANO'S, MARION was protected against disability discrimination under the ADA and ADAAA, From the time she  was reinstated on October 3, 2013 through the time she was constructively discharged on April 30, 2015, MARION continued to be an individual with a disability within the meaning of the ADA and ADAAA, 42 U.S.C. §§ 12102(1)(A)-(C); 12102(4)(D); 29 C.F.R. §§ 1630.2(h)(1)-(2), 1630.2(j)(1)(ii)); 1630.2(m).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.


79.     Throughout her employment at MARIANO'S, MARION was protected against disability discrimination under the ADA and ADAAA, 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3); 1630.9(d).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating

allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

80.     MARION applied for an accommodation that she not be required to stand throughout her entire eight-hour shift. (Ex. C).

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents.  Answering further, Defendant denies all allegations asserted in this paragraph.

81.     MARION'S doctor said:

> "Patient:      15635 – Ruth M. Marion
> DOB:          [redacted]
> SSN:
> Date:          4/22/2013 13:43
> Provider:     MEIS, JOSEPH A. M.D.
>
> This patient [MARION] is under my care for [Osteo]arthritis of her hip.
> _During an eight hour work day_ she should be allowed to stand
> and sit intermittently as her hip pain requires. She should not stand
> more than five hours total during an eight hour work day.
> JOSEPH A. MEIS, M.D."

Exh. D, attached hereto. [Emphasis added.]

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents.  Answering further, Defendant denies all allegations asserted in this paragraph.

82.     The doctor indicated that she was: (1) disabled; and (2) what kind of accommodation she needed during an "eight hour work day." Exh. E, at 4-5.

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

83. MARION'S doctor, Dr. Meis, had diagnosed MARION with Osteoarthritis of the right hip on April 18, 2013, a condition he further advised Susan Eutizzi, ROUNDY'S Director of Compensation & Benefits, in Milwaukee, on May 9, 2013, by phone, was substantial, significantly debilitating; *he advised Eutizzi* on May 9, 2013, that MARION could not stand for more than five hours per shift, could only do occasional lifting (he placed no pound restriction, just a limited amount) and he directed no pushing or pulling. *See* Exh. E, at 4-5, 8, the Department of Human Rights Response to Complainant's Request for Review.

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

84. This kind of accommodation could have been granted as in fact, Cannistra, MARION'S direct supervisor at the time, had been allowing her to sit and work up schedules for employees at the computer, and assist the Service Operations Managers ("SOM'S") with computer training to allow her to get off her feet for periods of time during the day when she made this request so that she did not have to stand for the full eight hours of her shift.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

85. MARION therefore expected that her accommodation request would be supported by Cannistra and MARIANO'S and that she would get it.

**ANSWER:** Defendant lacks sufficient information to either admit or deny the allegations in this paragraph and, on that basis, denies them.

86. However, the request, Exh. C, which had to be made in writing, accompanied by a doctor's note, which it was, Exh. D, Dr.; Meis' note, and his verbal explanation to Eutizzi on

May 9, 2013, encountered resistance from Eutizzi in ROUNDY'S Headquarters in Milwaukee. *See* Exh. E, at 4-5, 8.

      **ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

      87.    Eutizzi e-mailed Cannistra on May 10, 2013, and *admitted that MARION'S medical provider, Dr. Meis was contacted by her and confirmed that MARION has a permanent health condition that impacts her ability to complete the essential functions of her job.* Exh. E, at 4-5, 8.

      **ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

      88.    The e-mail further indicated that Dr. Meis indicated restrictions of no more than five hours of standing per eight hour shift; occasional lifting (no pound restriction, just a limited amount) and no pushing or pulling. Exh. E, at 5.

      **ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

      89.    Dr. Meis' letter and his response to Eutizzi on May 9, 2013, clear established to MARIANO'S and ROUNDY'S, that MARION'S condition was substantial, significantly debilitating and permanent, establishing that she was disabled under the ADA, and ADAAA. *See* Exh. E, at 8 n.3.

      **ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

90. The HR supervisor in Headquarters, Eutizzi, clearly did not want to grant MARION an accommodation that would allow her to continue to work full-time and so indicated in her May 10, 2013 e-mail to Cannistra. Exh. E, at 5.

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Answering further, Defendant denies all allegations asserted in this paragraph.

91. However, immediately before that, the store where MARION worked had just done that, granted a sedentary work restriction as a full-time accommodation to a younger worker who could not stand and work for a full eight hour shift, Julie Swieca (DOB 3/1972) who was allowed to work in the Cake Department.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

92. MARIANO'S could have moved MARION to the Cake Department as they eventually reinstated her to that Department as a Level 4, Supervisor after her union arbitration over her June 17, 2013, discharge.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

93. After a very long delay in response to MARION'S April 22, 2013 accommodation request, MARION suddenly summoned to a meeting with Durso and Cannistra on May 28, 2013.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

94. At her meeting with the Durso and Cannistra on May 28, 2013, MARION was threatened, yelled at and intimidated.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

95. There was no talk of accommodating her at all.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

96. Durso acknowledged that she had applied for an accommodation based on a disability, her Osteoarthritic right hip, but then threatened to terminate her or put her on part-time status, taking away her health care if she did not immediately withdraw her accommodation request and get her doctor to reverse himself on his April 22, 2013 letter.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

97. Durso and Cannistra knew before the meeting that MARION has a husband who is undergoing cancer treatment and that she needs medical insurance and thus she could not reduce to part-time status and lose her health insurance coverage so part-time status was not an option.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

98. Durso was unwilling to discuss the fact that Cannistra was already allowing MARION to assist the SOM'S with computer training and doing scheduling, both of which allowed her to sit at times during the day.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

99. He demanded that she get her doctor to withdraw the accommodation request by the end of the day or threatened to terminate her or force her to part-time status.

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

100. Forcing a person to go part-time against their will and threatening them if they do not withdraw their accommodation request is not engaging in an interactive process.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

101. It is also not an accommodation to force someone to either take part-time status or withdraw their accommodation request.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

102. Alternatively, MARION was discriminated against because of her age, 57.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

103. But for her age she would have been granted an accommodation.

**ANSWER:** Defendant denies the allegations asserted in this paragraph, and further denies that Plaintiff was not granted an accommodation.

104. As noted above Julie Swieca (DOB 3/1972) was granted sedentary work earlier due to an injury that caused her to become disabled and had been allowed to move into the Cake Department.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

105. When MARION became disabled, MARIANO'S corporate HR knowing her age was completely unwilling to accommodate her in any way as part of a pattern of getting rid of older workers at that store and generally.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

106.    This concludes our Overview discussion of the case, and now the Statement of Facts

**ANSWER:**    This paragraph does not state allegations that require any response.  To the extent this paragraph is construed as stating allegations of fact, those allegations are denied.

107.    MARION was hired by Defendant MARIANO'S to work in its Palatine, Illinois store located at 545 N. Hicks Rd., Palatine Illinois, shortly after MARIANO'S opened the store in Palatine.

**ANSWER:**    Defendant admits that Plaintiff was previously employed by Mariano's at Store No. 505, located in Palatine, Illinois.

108.    Her job at all times relevant was "Front End Supervisor."

**ANSWER:**    Defendant admits that during the course of Plaintiff's employment at Mariano's, she worked as an hourly employee in various departments, including the front end.

109.    Later, at the time of the discriminatory events in question, MARION was 57 years old.

**ANSWER:**    Defendant admits only that Plaintiff was, at some point, 57 years of age; Defendant denies all remaining allegations in this paragraph, and expressly denies any "discriminatory events" or wrongdoing on its part whatsoever.

110.    The MARIANO'S Palatine store is in this jurisdictional district.

**ANSWER:**    The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant does not challenge venue or jurisdiction in this Court.

111.    MARION was an "employee" of the MARIANO'S as defined by the ADA, the ADAAA and by the ADEA. 42 U.S.C. § 12111 (4); 29 U.S.C. § 630(f).

**ANSWER:** Defendant admits only that Plaintiff was previously employed by Mariano's. Defendant denies all remaining allegations in this paragraph, and further denies any and all liability and allegations of wrongdoing whatsoever.

112. Before MARION was suspended on June 7, 2013 and terminated on June 17, 2013, because of her Osteoarthritic hip as more fully described in Exh.s D and E, she was an individual with a disability within the meaning of the ADA and ADAAA, 42 U.S.C. §§ 12102(1)(A)-(C); 12102(4)(D); 29 C.F.R. §§ 1630.2(h)(1)-(2), 1630.2(j)(1)(ii)); 1630.2(m) as follows:

(a)     She has a physical impairment (Osteoarthritic right hip) that was substantial, significantly debilitating, and permanent; it substantially limits one or more of her major life activities, specifically, standing, walking, sitting, getting dressed, bending, working in her job as a Front Line Supervisor, which meets the definition of major life activities as defined by 42 U.S.C. §§ 12102(2)(a), 1211(8) and 29 C.F.R. § 1630.2(j);

(b)     She has a record of such impairment having developed the Osteoarthritic condition over time until it was diagnosed on April 22, 2013 by her doctor, Dr. Joseph Mies, and to the point to which he reiterated in a conversation to Susan Eutizzi, Defendant's Director of Compensation & Benefits on May 9, 2013, that it was a permanent health condition that impacts her ability to complete the essential functions of her job; that it had become so bad she needed an accommodation in the spring of 2013, and it was affecting major life activities as described in 68 (a) above, in accordance with 42 U.S.C. §§ 12111(8) and *Serednyj v. Beverly Healthcare, LLC,* 656 F. 3e 540 (7th Cir. 2011);

(c)     She had a record of such impairment when she was suspended on June 7, 2013, as defined by 42 U.S.C. § 12102(2);

(d)     She had a record of such impairment when she was terminated on June 17, 2013, as defined by 42 U.S.C. § 12102(2);

*(e)*     She had a record of such impairment when she was reinstated on October 3, 2013; *Id.;*

*(f)*     She had a record of such impairment when she was reinstated from October 3, 2013, through April 30, 2015, when she was constructively discharged; *Id.;*

(g)     Even if at the time her medical condition did not rise to the level of a disability under the ADA and ADAAA, the prescribed medical treatment for her Osteoarthritic hip, of periodic sitting and anti-inflammatories, and then hip replacement surgery, does not take it out of the realm of being a disability because of ameliorating measures under the ADAAA.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating

allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

113.     Throughout her employment at MARIANO'S, MARION was protected against disability discrimination under the ADA and ADAAA, From the time she was reinstated on October 3, 2013 through the time she was constructively discharged on April 30, 2015, MARION continued to be an individual with a disability within the meaning of the ADA and ADAAA, 42 U.S.C. §§ 12102(1)(A)-(C); 12102(4)(D); 29 C.F.R. §§ 1630.2(h)(1)-(2), 1630.2(j)(1)(ii)); 1630.2(m).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

114.     Throughout her employment at MARIANO'S, MARION was protected against disability discrimination under the ADA and ADAAA, 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3); 1630.9(d).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

115.     Throughout her employment at MARIANO'S, MARION was protected against discrimination for requesting a reasonable accommodation because of her disability under the ADA and ADAAA, 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3); 1630.9(d).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

116.     Throughout her employment at MARIANO'S, MARION was protected against retaliation for requesting an accommodation under the ADA and ADAAA, under anti-retaliation provisions of Title VII, of the Civil Rights Act of 1964 ("Title VII,") *as amended*, 42 U.S.C. §§ 2000e-3(a); 2000e–5(g)(1); 12117(a); 12203(a)-(b), as applied to the ADA and ADAAA (*see* 29 C.F.R. § 1630.12(a) (explaining retaliation and coercion); 42 U.S.C. § 12203(a) (defining retaliation)) .

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

117.     MARION was and is also a person protected against age discrimination based on her age, but for her age. 29 U.S.C. § 623(a).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

118.     Throughout her employment at MARIANO'S, MARION was and is a person protected against age discrimination based on her age, but for her age.  29 U.S.C. § 623(a).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

119.     MARION was and is protected against age discrimination but for her age if she requests a reasonable accommodation based on her disability related to her age but for her age. *Id.*; 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3); 1630.9(d).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating

allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

120.     At all relevant times, MARION was and is a person protected against acts of retaliation based on disability, retaliation based on disability related to age, but for her age, retaliation based on requests for reasonable accommodations based on disability and retaliation based on requests for reasonable accommodation based on disability related to age but for her age. 42 U.S.C. § 12203(a); 29 C.F.R. § 1630.12(a); 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

121.     MARIANO'S currently maintains an Americans With Disabilities ("ADA") policy.

**ANSWER:**     Defendant admits the allegations asserted in this paragraph.

122.     MARIANO'S never made its 2013 ADA policy available to its employees.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

123.     MARION never saw a 2013 MARIANO'S ADA Policy and it has never been produced as of the filing of this Amended Complaint.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

124.     MARIANO'S 2014 ADA policy which MARIANO'S claims is the same as the 2013 policy, is attached hereto as Exh. F, claims to have several steps to be followed when an employee such as MARION requests a reasonable accommodation when they have a disability, a policy that was largely ignored in this case.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

125. The process allegedly begins when an employee indicates that he or she needs an accommodation to their present job. Exh. G, at 4.

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

126. The next step in the process is that the Corporate ADA Team is contacted to review the situation and provides the appropriate forms. *Id.*

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

127. The third step is that the employee is to be provided with the forms and an interactive process is supposed to then take places. *Id.*

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

128. The fourth step is if the disability is determined to be "permanent," completed ADA forms are to be submitted to Corporate ADA for review and discussion with the employee's treating doctor or medical provider. *Id.*

**ANSWER:** Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

129.     The fifth step is that based on results, the next steps are to be determined with respect to an accommodation and an interactive discussion with the employee is supposed to be held. *Id.*

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

130.     The ADA policy indicates that the store should maintain the accommodation on a permanent basis. *Id.*

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

131.     The policy includes both a list of "Dos" and "Don'ts." Exh. G, at 5.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

132.     Listed under "Dos" is: "Be fair and consistent with all employees with regard to ADA issues; Maintain confidentiality of medical information and restrictions; and, Contact Corporate ADA as soon as possible with any medical restrictions." *Id.*

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

133.    Listed under "Don'ts" is: "Don't tell the employee they cannot return to work unless/until they have no restrictions; Don't make a determination regarding accommodating, or not accommodating a disability without engaging Corporate ADA; and Don't be afraid to document performance issues." *Id.*

**ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

134.    At all times relevant, MARION was suffering from an Osteoarthritic right hip which was diagnosed by her doctor, Dr. Joseph Mies on April 18, 2013.

**ANSWER:**    Defendant lacks sufficient information to either admit or deny the allegations set forth in this paragraph and, on that basis, the allegations are denied.

135.    MARIANO'S was advised of this by letter dated April 22, 2013 (Exh. D) and again by conversation with Susan Eutizzi on May 9, 2013, Defendant's Director of Compensation & Benefits (Exh. E).

**ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

136.    Defendant's Eutizzi acknowledged that MARION'S medical provider was contacted and confirmed that MARION has a permanent health condition that impacts her ability to complete the essential functions of her job by e-mail dated May 10, 2013, to her store Service Operations Manager, the store's highest ranking HR person, Mary Kay Cannistra. Exh. E at 5.

**ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Defendant denies the allegations asserted in this

paragraph.

137.     Defendants thereby admit that MARION was suffering from and does suffer from a physical impairment and had a record of a physical impairment, her Osteoarthritic right hip, as defined by the ADA/ADAAA that substantially limits one or more major life activities, in accordance with 42 U.S.C. §§ 12102(1); 12102(1)(A)-(B); 12102(4)(B); and 29 C.F.R. § 1630.2(h)(1)-(2).

**ANSWER:** Defendant objects to Plaintiff's argumentative mischaracterization of facts,

and denies the allegations asserted in this paragraph.

138.     MARIANO'S was aware of her disability. *See* Exh. A, at 3, I (B)(2) and Exh. D and E at 5.

**ANSWER:** Defendant states that the documents attached as exhibits to the amended

complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Defendant denies the allegations asserted in this

paragraph.

139.     At all times relevant, MARIANO'S was aware of MARION'S age and the fact that she was in the protected age group.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

140.     MARION'S work performance as a Front End Supervisor met MARIANO'S legitimate expectations as from the time she began working for MARIANO'S in May of 2011, through June 7, 2013 when she was suspended. Exh. A, at 4 I (B)(3).

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

141.     Her job performance further met MARIANO'S legitimate expectations from the time she was reinstated on October 3, 2013 through the date she was constructively discharged on April 30, 2015.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

142.     On April 22, 2013, MARION submitted a written request for a reasonable accommodation based on her disability pursuant to MARIANO'S alleged ADA policy (*see* Exh. C and *see* Exh. F at 4), along with her doctor's recommendation which asked that she be allowed to sit and stand intermittently as her hip pain required (*see* Dr. Meis' note, Exh. D). *See* Exh. A, at 4, I(B)(4).

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents.   Defendant denies the allegations asserted in this paragraph.

143.     MARION was thus able to perform the essential functions of her job duties as a Front End Supervisor with the reasonable accommodation her doctor was requesting.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

144.     In point of fact, she was being given that accommodation at the time by her immediate supervisor, Cannistra who was letting her sit by doing scheduling and assisting the SOM's with computer work and training, and she was letting her sit at times during her shift.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

145.     With that accommodation, MARION was getting her job done as a Front End Supervisor but the accommodation was not official so Cannistra asked her to go through the official process of requesting it.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts, and denies the allegations asserted in this paragraph.

146.     If MARIANO'S did not agree with what her doctor recommended, she asked that MARIANO'S engage her in an interactive process to discuss what kind of other accommodation could be worked out, possibly moving her to another department where she could do more sitting. *See, e.g.*, Exh. F at 2.

**ANSWER:**     Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor

completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

147.     With the accommodation she was requesting through her doctor, MARION was a qualified individual under the ADA, with a disability who, with or without a reasonable accommodation, could perform the essential functions of the employment position that she held or desired.

**ANSWER:**     The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

148.     Her April 22, 2013 request for accommodation was denied by her Store Manager, Nick Durso ("Durso") (age 45, not disabled) in a meeting held on May 28, 2013 with Durso, MARION and the Store's Service Operations Manager, Mary Kay Cannistra ("Cannistra") (age 52, not disabled). *See, e.g.,* Exh. A, at 4, I(B)(4).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

149.     Durso yelled at MARION, threatened her job if she did not withdraw the request, demanded that she withdraw it by that evening and get her doctor to withdraw it, and or threatened to put her on part-time duty immediately costing her medical benefits which he knew she desperately needed to support her husband who had cancer. Exh. A, at 4, I(B)(4).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

150.     Durso was unwilling to discuss moving MARION to another department or discuss any other alternatives. Exh. A, at 4, I(B)(4).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

151.     Durso told her corporate HR had determined that her "hip pain" was not a disability and that she did not have to be accommodated.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

152.     He demanded that she withdraw her request for an accommodation by the close of business the next day and get her doctor to submit a letter within the next day saying that she can go to work without any restrictions at all or she would be moved to part-time hours the next day.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

153.     Neither Durso nor anyone else at MARIANO'S made any effort at all to engage MARION in an interactive process to explore what other accommodations besides part-time status they could give MARION to deal with her performing the essential functions of her job while accommodating her Osteoarthritis of her right hip.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts,

and denies the allegations asserted in this paragraph.

154.     MARIANO'S actions also caused MARION embarrassment, humiliation, insult and emotional suffering and caused MARION great emotional distress.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

155.     Alternatively, MARIANO'S failure to accommodate her April 22, 2013, request for a reasonable accommodation was also due to her age 57. Exh. A, at 4, II (A).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

156.     But for her age, MARIANO'S would have moved MARION to sedentary work.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

157.     MARION'S ability to perform the essential functions of her job with a reasonable accommodation could have been accomplished without respect to her age.

**ANSWER:**     Defendant lacks sufficient information to respond to Plaintiff's vague and

ambiguous allegation "could have been accomplished without respect to her age" and, on that

basis, denies the allegations in this paragraph.

158.     Her ability to perform the essential functions of her job was unrelated to her age.

**ANSWER:** Defendant lacks sufficient information to respond to Plaintiff's vague and ambiguous allegation in this paragraph and, on that basis, the allegation is denied.

159. MARION was 57 years old in 2013 when the acts of discrimination occurred. Exh. A, at 4, II(B)(1).

**ANSWER:** Defendant admits only that Marion was 57 years old at some point in 2013. Defendant denies all remaining allegations in this paragraph.

160. Her work performance as a Front End Supervisor from the time she was hired in May of 2013, through June 7, 2013, met MARIANO'S expectations. Exh. A, at 4, II (B)(2).

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

161. In the May 28, 2013 meeting between Durso (not disabled, age 45), her Store Manager, MARION and Service Operations Manager, Cannistra (not disabled, age 52), her direct manager, Durso denied her April 22, 2013 reasonable accommodation request. Exh. A, at 4. II (B)(3).

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

162. By threatening to make her work part-time without benefits if she did not withdraw her request for a reasonable accommodation and get a doctor's note by the next day withdrawing the restrictions her doctor previously placed on her, MARIANO'S discriminated against MARION for making a request for a reasonable accommodation based on her disability in violation of the ADAAA. 42 U.S.C. §§ 12101, 12102(1); 12102(2)(A)-(B); 12102(4)(B); 12102(4)(E)(i)-(ii); 12111(8); 12112(a); 12201; 12203(a); 12211; 12114(a); (b)(5)(A).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

163. By doing this at the meeting, by threatening to make her work part-time without benefits if she did not withdraw her request for a reasonable accommodation based on her disability related to her hip by the next day and if she did not get a doctor's note by the next day withdrawing the restrictions her doctor placed on her by the next day, May 29, 2013, MARIANO'S retaliated against MARION for making a request for a reasonable accommodation based on her disability in

violation of the ADAAA. *See* the anti-retaliation provisions of Title VII, of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e-3(a); 2000e–5(g)(1); 12117(a); 12203(a)-(b), as applied to the ADA and ADAAA (*see* 29 C.F.R. § 1630.12(a) (explaining retaliation and coercion); 42 U.S.C. § 12203(a) (defining retaliation.))

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

164. By doing this at the meeting, by threatening to make her work part-time without benefits if she did not withdraw her request for a reasonable accommodation based on her disability related to her hip by the next day and if she did not get a doctor's note by the next day withdrawing the restrictions her doctor placed on her by the next day, May 29, 2013, MARIANO'S discriminated against MARION for making a request for a reasonable accommodation based on her disability but for her age in violation of the ADEA in violation of 29 U.S.C. §§ 621, 623(f)(2)(B), 626(b), 630(b) as those provisions relate to 42 U.S.C. §§ 12101, 12102(1); 12102(2)(A)-(B); 12102(4)(B); 12102(4)(E)(i)-(ii); 12111(8); 12112(a); 12201; 12203(a); 12211; 12114(a); (b)(5)(A).

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

165. By doing this at the meeting, by threatening to make her work part-time without benefits if she did not withdraw her request for a reasonable accommodation based on her disability related to her hip by the next day and if she did not get a doctor's note by the next day withdrawing the restrictions her doctor placed on her by the next day, May 29. 2013, MARIANO'S retaliated against MARION for making a request for a reasonable accommodation based on her disability but for her age in violation of the ADEA. *See* 29 U.S.C. § 623(d) and the anti-retaliation provisions of Title VII, of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e-3(a); 2000e–5(g)(1); 12117(a); 12203(a)-(b), as applied to the ADEA.

**ANSWER:** The allegations set forth in this paragraph state a legal conclusion to which no response is required. To the extent the allegations in this paragraph can be construed as stating

allegations of fact, Defendant denies all such allegations, and further denies any and all liability and allegations of wrongdoing whatsoever.

166.    These acts by MARIANO'S caused MARION significant damages including lost wages, fringe benefits, embarrassment, humiliation, insult and emotional suffering and caused MARION great emotional distress in addition to the costs and attorney's fees of having to bring this action.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

167.    Similarly situated employees under the age of 40, were provided reasonable accommodations for their medical disabilities. *See* Exh. A, at 4, II(B)(4).

**ANSWER:**    Defendant states that the documents attached as exhibits to the amended complaint speak for themselves, and further states that Plaintiff has neither accurately nor completely characterized those documents. Defendant denies the allegations asserted in this paragraph.

168.    On June 7, 2013, Durso, Store Manager, (not disabled, age 45) suspended MARION (disabled, age 57) without pay allegedly for allegedly "discounting."

**ANSWER:**    Defendant admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her employment for the sole reason that she had stolen from the Company.

169.    She was then on June 17, 2013, terminated for "discounting."

**ANSWER:**    Defendant admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her employment for the sole reason that she had stolen from the Company.

170.    The accusations made against MARION were never admitted by her and in fact she denied receipt of discounts.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

171.    There was never any direct or indirect evidence that MARION received any discounts.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.


172.    MARION was accused of receiving a discount on one occasion, May 15, 2013, by an uncorroborated self-serving statement of a deli clerk who was fired for engaging in a scheme to discount, Bill Malek.

**ANSWER:**    Defendant objects to Plaintiff's argumentative mischaracterization of facts,

but admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her

employment for the sole reason that she had stolen from the Company.


173.    Cannistra then claimed that based on a glance by her untrained eye at checkout she thought she saw a discount but she never confronted MARION about it.

**ANSWER:**    Defendant objects to Plaintiff's argumentative mischaracterization of facts,

but admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her

employment for the sole reason that she had stolen from the Company.


174.    However, the May 15, 2013 receipt rebuts the claim that MARION received a discount on any items Malek rang up for her that day as does the video of MARION'S checkout security video which shows exactly what MARION purchased, two pieces of evidence which exonerated her but were ignored by Cannistra when she terminated MARION for discounting on June 17, 2013.

**ANSWER:**    Defendant objects to Plaintiff's argumentative mischaracterization of facts,

but admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her

employment for the sole reason that she had stolen from the Company.


175.    MARIANO'S suspension of MARION on June 7, 2013, was nothing more than a pretext, an excuse for MARIANO'S discriminating against MARION based on her disability.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.


176.    Alternatively MARIANO'S suspension on June 7, 2013, was nothing more than a pretext, an excuse for MARIANO'S discriminating against MARION but for her age.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


177.     MARIANO'S termination of MARION on June 17, 2013, was nothing more than a pretext, an excuse for MARIANO'S discriminating against MARION based on her disability.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


178.     MARIANO'S termination of MARION on June 17, 2013, was nothing more than a pretext, an excuse for MARIANO'S discriminating against MARION but for her age.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


179.     The only logical explanation was that MARION was suspended and dismissed because she gave her April 22, 2013, written reasonable accommodation request (Exh. D, for physical disability to Cannistra who was the same manager who instigated the discounting investigation against MARION on May 15, 2013, and who was the same manager who signed MARION'S termination notice on June 17, 2013 only three weeks after participating in a sham reasonable accommodation meeting after exchanging e-mails with Corporate Benefits regarding MARION'S request for a reasonable accommodation and writing a self-serving note falsely stating that MARION was voluntarily withdrawing her request and getting her doctor to retract her restrictions all on May 28, 2013.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts, but admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her employment for the sole reason that she had stolen from the Company. Defendant denies all remaining allegations asserted in this paragraph.


180.     While Cannistra did this she knew all the while that she was preparing to suspend and terminate MARION on a trumped up false and flimsy charge of receiving discounting.

**ANSWER:**     Defendant objects to Plaintiff's argumentative mischaracterization of facts, but admits that Plaintiff stole from the Company, and further admits that Mariano's terminated her employment for the sole reason that she had stolen from the Company. Defendant denies all remaining allegations asserted in this paragraph.

181.     The motivation for MARIANO'S discipline of MARION was retaliation for her reasonable accommodation requests and the retaliatory motive of Durso, Cannistra and ROUNDY'S corporate.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

182.     Alternatively MARION was terminated but for her age because of the corporate mentality of Defendants because Defendants were ridding themselves of as many of the older full-time workers they could and replacing them with younger part- time workers who were younger as evidenced by a trend in this direction and the way they treated younger workers like Julie Swieca when they had injuries or disabilities.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

183.     MARIANO'S suspension of MARION caused her significant damages including lost wages, fringe benefits, embarrassment, humiliation, insult and emotional suffering and caused MARION great emotional distress in addition to the costs and attorney's fees of having to bring this action.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

184.     MARIANO'S termination of MARION caused her significant damages including lost wages, fringe benefits, embarrassment, humiliation, insult and emotional suffering and caused MARION great emotional distress in addition to the costs and attorney's fees of having to bring this action.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

185.     A Similarly situated younger employee with a disability, Julie Swieca (DOB 3/1972) was not discharged in retaliation for asking for an accommodation due to a disability.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

186.     After MARION was reinstated on October 3, 2013, MARIANO'S continued to harass her, closely supervise her, question her, and make her job extremely uncomfortable to the extent that no reasonable person could have or should have been expected to continue working there under the circumstances.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

187.     Therefore after she received the hip replacement surgery and fully recovered from it and located another job, she constructively discharged herself on April 30, 2015.

46

**ANSWER:**    Defendant admits that Plaintiff voluntarily resigned from Mariano's, and denies all remaining allegations asserted in this paragraph.

## COUNT I
## AGE DISCRIMINATION

188.    MARION incorporates by reference ¶¶ 1-187 as if fully stated herein.

**ANSWER:**    Defendant restates and incorporates by reference its answers to paragraphs 1-187, inclusive, as and for its answer to this paragraph 188.

189.    MARION incorporates the allegations and facts contained in Count I, of on pages 3 and 4, her Charge of Discrimination filed with the Department, attached hereto as Exh. A, at pp. 3-4, and her amended Charge, attached hereto as Exh. B, and reiterates the same as if fully set forth herein.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

190.    Throughout her employment with MARIANO'S, MARION performed her duties as a Front End Supervisor in a manner that met MARIANO'S legitimate expectations.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

191.    MARION provided a doctor's note from Joseph Meis, M.D. in accordance with MARIANO'S ADA Policy, requesting a reasonable accommodation, requesting that she be allowed to periodically sit in the performance of her job and not be required to stand for more than five hours during her eight hour shift.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

192.    MARION at all times relevant as an individual who was 57-years old. *See* 29 U.S.C. §§ 621, 623(f)(2)(B), 626(b), 630(b).

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

193.    Younger individuals specifically Julie Swieca (DOB 3/1972) was given a sedentary job when she had a disability; she was moved to the Cake Department.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

194.     MARION was denied not only the right to an accommodation in her present job, she was treated differently than a similarly situated substantially younger individual, Julie Swieca by not being moved to a more sedentary job, being suspended and then fired on a pretext, discounting as described above.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

195.     These acts were based on her age, 57, and the Defendant's move to get rid of older full-time workers and move to a younger, part-time workforce.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

196.     But for MARION'S age, she would have been treated the same as Julie Swieca and would have either been accommodated, or moved to another position.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

197.     She would not have been suspended, terminated or on reinstatement continually harassed until it was necessary for her to constructively discharge herself.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

198.     But for her age, none of these acts would have occurred to her.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

199.     These acts were in violation of her rights under the ADEA, 29 C.F.R. § 1630.2(n) and, specifically, 29 U.S.C. §§ 621, 623(f)(2)(B), 626(b), 630(b).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

200.     MARIANO'S failed to grant her a reasonable accommodation as requested on April 22, 2013, and again by her doctor on May 9, 2013, and again in her meeting with her Store Manager Nick Durso and Operations Manager May Kay Cannistra, on May 28, 2013, in violation of 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3), 1630.9(d), and in violation of 29 U.S.C. §§ 621, 623(f)(2)(B), 626(b), 630(b).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

201.     But for the Defendants' acts of age discrimination they have caused MARION to suffer lost wages, fringe benefits and other damages recoverable under the ADEA.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

202.     Further, the acts of age discrimination committed by the Defendants were "willful" as defined by the ADEA, 29 U.S.C. § 626 (b) in that MARIANO'S knew or reasonably should have known that its actions violated the ADEA, or they engaged in the acts with reckless disregard of the requirements of the ADEA.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

**WHEREFORE,** for all of the reasons set forth above, Defendant Roundy's Illinois, LLC

d/b/a Mariano's respectfully request that this Court enter an Order:

A. Awarding Judgment in favor of Defendant and against Plaintiff on all claims asserted in Plaintiff's Amended Complaint;

B. Denying all relief sought by Plaintiff, and dismissing all claims asserted in the Amended Complaint, *with prejudice*;

C. Awarding to Defendant all of its costs and attorneys' fees incurred in connection with this action; and

D. Awarding to Defendant any further relief that this Court deems just and proper.

## COUNT II
## FAILURE TO ACCOMMODATE ADA/ADAAA

203.     MARION incorporates by reference ¶¶ 1-187 as if fully stated herein.

**ANSWER:**     Defendant restates and incorporates by reference its answers to paragraphs

1-187, inclusive, as and for its answer to this paragraph 203.

204.     MARION incorporates the allegations and facts contained in Count I, on pages 3 and 4, her Charge of Discrimination filed with the Department, attached hereto as Exh. A, and her amended Charge, attached hereto as Exh. B., and reiterates the same as if fully set forth herein.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

205.     Throughout her employment with MARIANO'S, MARION performed her duties as a Front End Supervisor in a manner that met MARIANO'S legitimate expectations.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

206.     MARION provided a doctor's note from Joseph Meis, M.D., dated April 22, 2013, in accordance with MARIANO'S ADA Policy, and her doctor spoke to Susan Eutizzi, ROUNDY'S Director of Compensation and Benefits, on May 9, 2013, advising them that that he had diagnosed MARION with Osteoarthritis on April 18, 2013, and that the condition was a permanent health condition that impacted her ability to complete the essential functions of her job; he requested a reasonable accommodation, that she be allowed to periodically sit in the performance of her job and not be required to stand for more than five hours during her eight hour shift. Exh. D, and Exh. E at 5 and as more fully described above in ¶ 77 above.

        **ANSWER:**     Defendant denies the allegations asserted in this paragraph.


207.     MARION is a qualified person with a disability as defined by the ADA/ADAAA, 42 U.S.C. §§ 12102(1); 12102(4)(E)(i)-(ii); 12111, as interpreted by 29 C.F.R. §§ 1630.2(h)(1)-(2); 1630.2(j)(1)(ii); 1630.2(j)(1)(vi); 1630.2(m).

        **ANSWER:**     Defendant denies the allegations asserted in this paragraph.


208.     Her disability is unrelated to her ability to perform the essential functions of her job as a Front End Supervisor, with or without a reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n).

        **ANSWER:**     Defendant denies the allegations asserted in this paragraph.


209.     MARIANO'S failed to grant her a reasonable accommodation as requested on April 22, 2013, and again on May 9, 2013, and again on May 28, 2013 in her meeting with her Store Manager Nick Durso and Operations Manager May Kay Cannistra, her immediate manager in accordance with 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3), 1630.9(d).

        **ANSWER:**     Defendant denies the allegations asserted in this paragraph.


210.     MARIANO'S failed to engage MARION in any kind of a reasonable interactive process as required by the ADA/ADAAA when an employee requests a reasonable accommodation and instead hectored her, threatened her and demanded that she withdraw her request immediately and get her doctor to do the same. 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3), 1630.9(d).

        **ANSWER:**     Defendant denies the allegations asserted in this paragraph.


211.     The denial of her request was a pretext to discriminate against her based on her request for a reasonable accommodation based on her disability on April 22, 2013, May 9, 2013 and May 28, 2013.

        **ANSWER:**     Defendant denies the allegations asserted in this paragraph.

212.     Because of the denials of MARION'S requests for reasonable accommodation based on her disability on April 22, 2013 and on May 28, 2013, MARION suffered embarrassment, humiliation, insult and emotional suffering because of the civil rights violations committed against her as set forth in this Count by MARIANO'S.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

**WHEREFORE,** for all of the reasons set forth above, Defendant Roundy's Illinois, LLC

d/b/a Mariano's respectfully request that this Court enter an Order:

A.  Awarding Judgment in favor of Defendant and against Plaintiff on all claims asserted in Plaintiff's Amended Complaint;

B.  Denying all relief sought by Plaintiff, and dismissing all claims asserted in the Amended Complaint, *with prejudice*;

C.  Awarding to Defendant all of its costs and attorneys' fees incurred in connection with this action; and

D.  Awarding to Defendant any further relief that this Court deems just and proper.

## COUNT III
## RETALIATION BASED REQUEST FOR ACCOMMODATION
## <u>ADA/ADAAA - SUSPENSION</u>

213.     MARION incorporates by reference ¶¶ 1-187, 203-212 as if fully stated herein.

**ANSWER:**     Defendant restates and incorporates by reference its answers to paragraphs

1-187, and paragraphs 203-212, inclusive, as and for its answer to this paragraph 213.

214.     MARION incorporates the facts contained in her Charge of Discrimination filed with the Department, attached hereto as Exh. A, at pages 4 and 5, and her amended Charge, attached hereto as Exh. B, and reiterates the same as if fully set forth herein.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

215.     Throughout her employment with MARIANO'S, MARION performed her duties as a Front End Supervisor in a manner that met MARIANO'S legitimate expectations.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

216.     MARION provided a doctor's note from Joseph Meis, M.D., dated April 22, 2013, in accordance with MARIANO'S ADA Policy, and her doctor spoke to Susan Eutizzi, ROUNDY'S Director of Compensation and Benefits, on May 9, 2013, advising them that that he had diagnosed MARION with Osteoarthritis on April 18, 2013, and that the condition was a permanent health condition that impacted her ability to complete the essential functions of her job; he requested a reasonable accommodation, that she be allowed to periodically sit in the performance of her job and not be required to stand for more than five hours during her eight hour shift. Exh. D, and Exh. E at 5 and as more fully described above in ¶ 77 above.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


217.     MARION is a qualified person with a disability as defined by the ADA/ADAAA, 42 U.S.C. §§ 12102(1); 12102(4)(E)(i)-(ii); 12111, as interpreted by 29 C.F.R. §§ 1630.2(h)(1)-(2); 1630.2(j)(1)(ii); 1630.2(j)(1)(vi); 1630.2(m).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


218.     Her disability is unrelated to her ability to perform the essential functions of her job as a Front End Supervisor, with or without a reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


219.     MARIANO'S failed to grant her a reasonable accommodation as requested on April 22, 2013, and again by her doctor in his conversation with Eutizzi on May 9, 2013, and again in her meeting with her Store Manager Nick Durso and Operations Manager May Kay Cannistra, on May 28, 2013. 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3), 1630.9(d).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


220.     MARIANO'S failed to engage MARION in the interactive process required by the ADA/ADAAA when an employee requests a reasonable accommodation. 42 U.S.C. § 12111(9) and 29 C.F.R. §§ 1630.2(o)(1)(i), (3), 1630.9(d).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.


221.     The denial was a pretext to discriminate against her based on her request for a reasonable accommodation based on her disability on April 22, 2013, May 9, 2013 and May 28, 2013.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

222.     Durso and Cannistra at the direction of ROUDNY'S Corporate HR demanded that MARION withdraw her request for accommodation on the same day Durso and Cannistra met with MARION, on May 28, 2013.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

223.     June 7, 2013, Store Manager Durso retaliated against MARION for even requesting an accommodation by suspending her without pay for allegedly "discounting," as more fully described in ¶¶ 162-168 above.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

224.     The person who signed the suspension was Cannistra.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

225.     The "discounting" charge was false and Durso and Cannistra knew it was false. *See* ¶¶ 162-168.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

226.     Non-disabled individuals and individuals who had not requested accommodations have not been suspended for alleged one instance of "discounting" or were treated the same as MARION was for her alleged discounting incident. *See* ¶ 84.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

227.     The act of suspending MARION was taken in retaliation for MARION requesting a reasonable accommodation based on her disability and asserting her rights as protected by the ADA/ADAAA and as such violates the anti-retaliation provisions of the ADA/ADAAA and Title VII, as applied to the ADA/ADAAA, Title VII, of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e-3(a); 2000e– 5(g)(1); 12117(a); 12203(a)-(b), as applied to the ADA and ADAAA (*see* 29 C.F.R. § 1630.12(a) (explaining retaliation and coercion); 42 U.S.C. § 12203(a) (defining retaliation)) and the ADEA 29 U.S.C. § 623(d).

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

228.     Durso and Cannistra suspended MARION in retaliation for her requesting an accommodation and asserting her rights under the ADA/ADAAA in consultation with and under the direction of MARIANO'S Corporate HR, ROUNDY'S in Milwaukee.

**ANSWER:**     Defendant denies the allegations asserted in this paragraph.

229. Durso and Cannistra denied MARION'S accommodation requests knowing that they were going to suspend and possibly terminate MARION for discounting which they had set in motion before the May 28, 2013 meeting.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

230. As a result of MARIANO'S denial or MARION'S requests for accommodation based on her disability made on April 22, 2013, May 9, 2013, and May 28, 2013, and MARIANO'S subsequent suspension of MARION on June 7, 2013 without pay, in retaliation for her making the requests, MARION suffered actual damages in the form of lost pay and fringe benefits, and suffered embarrassment, humiliation, insult and emotional suffering as a result of the civil rights violations committed against her as set forth in this Count by MARIANO'S.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

**WHEREFORE,** for all of the reasons set forth above, Defendant Roundy's Illinois, LLC

d/b/a Mariano's respectfully request that this Court enter an Order:

A. Awarding Judgment in favor of Defendant and against Plaintiff on all claims asserted in Plaintiff's Amended Complaint;

B. Denying all relief sought by Plaintiff, and dismissing all claims asserted in the Amended Complaint, *with prejudice*;

C. Awarding to Defendant all of its costs and attorneys' fees incurred in connection with this action; and

D. Awarding to Defendant any further relief that this Court deems just and proper.

## COUNT IV
## RETALIATION BASED ON ADA/ADAAA TITLE VII - TERMINATION

231. MARION incorporates by reference ¶¶ 1-187, 203-230 as if fully stated herein.

**ANSWER:** Defendant restates and incorporates by reference its answers to paragraphs

1-187, and paragraphs 203-230, inclusive, as and for its answer to this paragraph 231.

232. MARION incorporates the facts contained in her Charge of Discrimination filed with the Department, attached hereto as Exh. A, at pages 4-6, and her amended Charge, attached hereto as Exh. B., and reiterates the same as if fully set forth herein.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

233.    MARION was terminated allegedly for "discounting" on June 17, 2013 as more fully described above.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

234.    The real reason she was terminated was in retaliation for her exercising her rights under the ADA/ADAAA in requesting a reasonable accommodation based on her disability arthritic hip as described above.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

235.    MARIANO'S termination is in violation of the anti-retaliation provisions of the ADA/ADAAA as applicable under Title VII, for her exercising her rights under the Act by requesting a reasonable accommodation as indicated above.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

236.    Because of Durso and Cannistra and MARIANO'S terminating MARION on June 17, 2013, MARION suffered lost wages and fringe benefits, embarrassment, humiliation, insult and emotional suffering and lost wages because of the civil rights violations committed against her as set forth in this Count by MARIANO'S.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

**WHEREFORE,** for all of the reasons set forth above, Defendant Roundy's Illinois, LLC

d/b/a Mariano's respectfully request that this Court enter an Order:

A.    Awarding Judgment in favor of Defendant and against Plaintiff on all claims asserted in Plaintiff's Amended Complaint;

B.    Denying all relief sought by Plaintiff, and dismissing all claims asserted in the Amended Complaint, *with prejudice*;

C.    Awarding to Defendant all of its costs and attorneys' fees incurred in connection with this action; and

D.    Awarding to Defendant any further relief that this Court deems just and proper.

## COUNT V
## RETALIATION HARASSMENT ON REINSTATEMENT ADA/ADAAA–
## CONSTRUCTIVE DISCHARGE

237.    MARION incorporates by reference ¶¶ 1-187, 203-236 as if fully stated herein.

**ANSWER:** Defendant restates and incorporates by reference its answers to paragraphs 1-187, and paragraphs 203-236, inclusive, as and for its answer to this paragraph 237.

238. MARION was reinstated as a result of her union grievance and arbitration remedy.

**ANSWER:** Defendant admits the allegations asserted in this paragraph.

239. However, when she was reinstated she was not paid lost wages and fringe benefits.

**ANSWER:** Defendant admits that it complied with the arbitration decision in Plaintiff's union grievance.

240. On reinstatement, she was continually harassed and subjected to overly close scrutiny with MARIANO'S making it as uncomfortable as possible for her to continue working there.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

241. They made it uncomfortable to such an extent that no reasonable person would have been expected to continue working there.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

242. Finally, MARION had no choice but to quit on April 30, 2015.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

243. The acts of harassment and retaliation were in direct result to the fact that MARION exercised her rights under the ADA/ADAAA in requesting a reasonable accommodation based on her Osteoarthritic right hip, and because she filed her charge and amended charge of discrimination in this case, Exh.s A and B.

**ANSWER:** Defendant denies the allegations asserted in this paragraph.

244. MARION is not required to exhaust her administrative remedies to allege these additional claims of retaliation in this Complaint under authority of the Seventh Circuit's precedent in *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 545 (7th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989), as the subsequent retaliation involved situations where the alleged retaliation arose after the charge of discrimination had been filed; in

such cases, only a single filing is necessary to comply with the intent of Title VII, the ADA, ADAAA and ADEA; a double filing "would serve no purpose except to create additional procedural technicalities." *Id.*; *see also Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989) ("[W]e join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge"); *Fentress v. Potter*, No. 09-C-2231, 2012 .S. Dist. LEXIS 62484, at *7-8 (N.D. Ill. May 4, 2012) (concluding that a plaintiff who had filed a claim for retaliation resulting from the filing of an initial EEOC charge had not failed to exhaust her administrative remedies even though the alleged retaliation took place two years after the initial EEOC charge was filed); *Turpin v. WellPoint Cos*., No. 3:10CV850 HEH, 2011 U.S. Dist. LEXIS 56000, at *3–4, 10 (E.D. Va. May 25, 2011) (concluding that even though the alleged retaliation occurred three years after the filing of a discrimination charge with the EEOC, the plaintiff was "free to raise this claim for the first time in federal court.")

**ANSWER:**    The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent the allegations in this paragraph can be construed as stating allegations of fact, Defendant denies all such allegations, and further denies any and all wrongdoing and liability on its part whatsoever.

245.    As a direct and proximate cause of the constructive discharge MARION has suffered lost wages and fringe benefits she would have received if she were able to continue working at MARIANO'S and will continue to sustain those losses into the future at some point.

**ANSWER:**    Defendant denies the allegations asserted in this paragraph.

**WHEREFORE,** for all of the reasons set forth above, Defendant Roundy's Illinois, LLC d/b/a Mariano's respectfully request that this Court enter an Order:

A.  Awarding Judgment in favor of Defendant and against Plaintiff on all claims asserted in Plaintiff's Amended Complaint;

B.  Denying all relief sought by Plaintiff, and dismissing all claims asserted in the Amended Complaint, *with prejudice*;

C.  Awarding to Defendant all of its costs and attorneys' fees incurred in connection with this action; and

D.  Awarding to Defendant any further relief that this Court deems just and proper.

## <u>TRIAL BY JURY</u>

246.    Plaintiff demands a trial by jury on all counts triable by jury.

**ANSWER:** This paragraph does not state allegations that require any response. To the extent this paragraph is construed as stating allegations of fact, those allegations are denied.

### DEFENDANT'S AFFIRMATIVE DEFENSES

Defendant Roundy's Illinois, LLC d/b/a Mariano's ("Defendant," "Mariano's" or the "Company"), by and through its undersigned counsel, respectfully submits the following Affirmative Defenses to Plaintiff's Amended Complaint:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed because her suspension and termination did not constitute an act of harassment, discrimination, or retaliation as a matter of law.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff's employer exercised reasonable care to prevent and promptly correct any harassing or discriminatory behavior and Plaintiff unreasonably failed to take advantage of the preventative opportunities provided by her employer, or to otherwise avoid the alleged harm.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the alleged harassment or discrimination did not involve or result in any tangible employment action.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff's employer exercised all reasonable and due care in discovering and remedying any allegedly harassing or discriminatory conduct.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the allegedly harassing or discriminatory conduct was not unwelcome by her and therefore did not constitute harassment as a matter of law.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the allegedly harassing or discriminatory conduct was not conducted by anyone acting within the scope of their duties as an employee of Defendants.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendants did not aid, abet, ratify, condone, encourage or acquiesce in any alleged harassing or discriminatory conduct.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the alleged conduct does not constitute harassment or discrimination as a matter of law.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed because Plaintiff was suspended and terminated for a valid, non-discriminatory reason.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to damages because Defendant at no time engaged in any willful or intentional discriminatory or retaliatory conduct, and at no time engaged in any discriminatory or retaliatory practice or conduct with malice or reckless indifference to Plaintiff's rights.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the principles of waiver and estoppel.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate her damages.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statute(s) of limitation, because Plaintiff failed to commence his action within 90 days following her receipt of a "right to sue" letter, and/or commenced this lawsuit prior to exhausting her administrative remedies.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims that are outside the substantive and/or temporal scope of the administrative charge of discrimination referenced in her Amended Complaint (the "Charge"), or were improperly included as part of the Charge, are barred due to Plaintiff's failure to fulfill the administrative requirements set forth in 42 U.S.C. §2000e-5.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed, and she is not entitled to any recovery in this case; however, in the event Plaintiff ultimately prevails on any of her claims, then her damages are limited by all relevant and applicable statutory caps.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for failure to accommodate are barred because Plaintiff unreasonable failed or refused to engage Defendant in an interactive process, or accept the accommodation(s) provided to her.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed because she was not qualified to perform the essential functions of her position, with or without a reasonable accommodation.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed because the accommodation(s) she requested would have imposed an undue hardship on Defendant.

### TWENTIETH AFFIRMATIVE DEFENSE

To the extent Plaintiff is asserting any claims against The Kroger Co. ("Kroger") in her Amended Complaint, Plaintiff was never employed by Kroger, and therefore lacks standing to assert any employment-related claims against Kroger.

### PRESERVATION OF AFFIRMATIVE DEFENSES

Defendant by this statement preserves all future affirmative defenses that may be supported by the evidence in this cause, and reserves the right to supplement its affirmative defenses.

**WHEREFORE,** for all of the reasons set forth above, Defendant Roundy's Illinois, LLC d/b/a Mariano's respectfully request that this Court enter an Order:

A.  Awarding Judgment in favor of Defendant and against Plaintiff on all claims asserted in Plaintiff's Amended Complaint;

B.  Denying all relief sought by Plaintiff, and dismissing all claims asserted in the Amended Complaint, *with prejudice*;

C.  Awarding to Defendant all of its costs and attorneys' fees incurred in connection with this action; and

D.  Awarding to Defendant any further relief that this Court deems just and proper.

Dated: April 9, 2018

Respectfully submitted,

**ROUNDY'S ILLINOIS, LLC, d/b/a Mariano's, Defendant**

By:*/s/ Christopher S. Griesmeyer*
   One of Its Attorneys
   Christopher S. Griesmeyer (ARDC No. 6269851)
   GREIMAN, ROME & GRIESMEYER, LLC
   Two North LaSalle, Suite 1601
   Chicago, Illinois 60602
   (312) 428-2750
   cgriesmeyer@grglegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 9, 2018, a copy of the foregoing *Defendant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint* was filed with the Court's CM/ECF system, which will provide notice to all counsel of record registered to receive notices, at the addresses listed below:

L. Steven Platt
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 456-0285
lsplatt@rsplaw.com

Scott A. Mayer
5599 S. Hanover Way
Greenwood Village CO 80111-3730
(847) 915-1929
Scottm2525@yahoo.com

/s/ Christopher S. Griesmeyer
Christopher S. Griesmeyer (IL Bar No. 6269851)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle St., Ste. 1601
Chicago, IL 60602
Telephone: (312) 428-2750
Facsimile: (312) 332-2781
cgriesmeyer@grglegal.com